# United States Court of Appeals
## For the First Circuit

No. 07-2044

ALFRED URUCI, ARIANA URUCI, XHULIO URUCI,

Petitioners,

v.

ERIC H. HOLDER,[*] Attorney General,

Respondent, Appellee.

PETITION FROM A DECISION OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard and Stahl, <u>Circuit Judges</u>,
and Besosa,[**] <u>District Judge</u>.

<u>Ilana Greenstein</u>, <u>Harvey Kaplan</u>, <u>Maureen O'Sullivan</u>, <u>Jeremiah Friedman</u> and <u>Kaplan, O'Sullivan & Friedman, LLP</u> on brief for petitioners.
<u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General, Civil Division, <u>Jeffrey J. Bernstein</u>, Senior Litigation Counsel and <u>P. Michael Truman</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, on brief for respondent.

February 20, 2009

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder has been substituted for Attorney General Michael B. Mukasey.

[**]Of the District of Puerto Rico, sitting by designation.

**HOWARD**, **Circuit Judge**.    The petitioners, Albanian nationals Alfred Uruci, his wife Ariana and their son Xhulio seek judicial review of a final order of the Board of Immigration Appeals (BIA).  The order upheld an Immigration Judge's (IJ) denial of their request for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  The BIA agreed with the IJ that, even assuming that Alfred Uruci suffered past persecution, the government had rebutted the presumption that Uruci held a well-founded fear of future persecution by demonstrating a change in country conditions in Albania.

The Urucis argue that the BIA's denial of their claims is not supported by substantial evidence.  We disagree and deny the petition.

## I.  Background

The Urucis entered the United States in April 2000 without proper documentation.  In January 2001, Alfred Uruci filed an application for asylum, withholding of removal, and protection under CAT, listing his spouse and son as derivative beneficiaries. In August 2002, the Immigration and Naturalization Service (INS) commenced removal proceedings against them, pursuant to 8 U.S.C. § 1227(a)(1)(A).    Uruci conceded removability but pursued his applications for asylum, withholding of removal, and protection under CAT.

In support of his applications, Uruci claimed that he

suffered persecution in Albania because of his political opinion and membership in a particular social group. Specifically, Uruci alleged that, as a member of the Democratic Party, he had suffered persecution by the Socialist Party and thus held a well-founded fear of future persecution.

Uruci, Ariana Uruci, and Nazo Veliu[1] all testified to the alleged persecution of Uruci. Additionally, the Urucis and the government each submitted documentation about country conditions in Albania. We summarize the evidence presented to the IJ as follows.

Alfred Uruci was born in Lushnje, Albania. His family was oppressed by Albania's communist dictatorship, and in 1991, after the fall of communism, Uruci joined the Democratic Party. He was a "simple member" who participated in rallies and meetings in his region, and served as an election monitor in 1997. Although other family members supported the Democratic Party, only Uruci formally joined. Since the fall of the government, Uruci's siblings and parents have not experienced persecution while living in Albania.

In support of his persecution claim, Uruci described five

---

[1] Veliu corroborated Uruci's narrative of his attacks and confirmed that the attacks occurred because of his Democratic Party membership. She is from Lushnje, the same town as Uruci, and knew of Uruci's involvement in the Democratic Party because she was secretary to the local party branch from 1997 through 2000. She also served six years as a judge, one year as mayor of the town, and one year as the town's attorney. Veliu entered the United States in 2001 and was granted political asylum.

incidents that occurred in Lushnje. All of these incidents involved either physical violence, threats, or both. And, during one in particular, Uruci was beaten severely enough to require hospitalization.

During some of these incidents, persons associated with the Socialist party either scolded Uruci for his Democratic activities or warned him to cease these activities. But other attacks were motivated in part by Uruci's non-political actions. Specifically, during some of the incidents Uruci was threatened for his attempts to recover property he believed was legally his from Xhemil Bendo, a member of a former communist family with ties to Lushnje and the then-Socialist local government.

Collectively, the incidents described above led Uruci to flee to Greece with his wife and son in September 1998. Nevertheless, the Urucis did travel back to Albania three times without incident, avoiding Lushnje on each visit. In April 2000, the Urucis entered the United States and applied for asylum. Uruci and his wife each stated a belief that if they returned to Albania, regardless of location, the Socialist Party would harm Mr. Uruci.

The IJ determined that the witnesses who testified to the incidents that occurred in Albania were all credible. And the IJ assumed, *arguendo,* that the incidents constituted persecution and that a nexus existed between the attacks and a protected ground. Nevertheless, the IJ rejected Uruci's petition for asylum,

withholding of removal, and protection under CAT. Even with a presumption of a well-founded fear of future persecution, the IJ concluded that conditions in Albania had changed to such an extent that Uruci's fear of future persecution was no longer reasonable.

In reaching this conclusion, the IJ reviewed a 2004 State Department Country Report,[2] a 2004 State Department Asylum Profile,[3] as well as documents which evidenced the 2005 victory of the Democratic Party in the Albanian Parliament, obtaining control of 80 seats out of 140. The IJ also reviewed documents that called the two State Department reports into question, including a 2001 Amnesty International report,[4] but concluded that they did not negate the more recent State Department reports.

Finding that the government met its burden and rebutted the presumption of a well-founded fear of future persecution, the IJ accordingly denied Uruci's claim for asylum. Moreover, since Uruci failed to meet the asylum standard, the IJ concluded that he did not meet the more stringent standard for withholding of removal. Turning to Uruci's claim for protection under CAT, the IJ

---

[2] United States Department of State, Bureau of Democracy, Human Rights and Labor, *Albania: Country Reports on Human Rights Practices* (2004).

[3] United States Department of State, Bureau of Democracy, Human Rights and Labor, *Albania: Profile of Asylum Claims and Country Conditions* (2004).

[4] Amnesty Int'l, Albania; Torture and ill-treatment - an end to impunity? (May 2001).

found that Uruci failed to establish that "it is more likely than not" that if returned to Albania, he would be tortured by an official of the Albanian Government. Thus, the IJ denied Uruci's application for protection under CAT.

The BIA affirmed the IJ's decision on the basis of changed country conditions.

## II.    Discussion

We start with Uruci's asylum claim, because a failure to establish a well-founded fear of persecution necessarily forecloses a petitioner's ability to qualify for withholding of removal by showing that more likely than not he would face persecution. Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002). "Where, as here, 'the BIA has adopted and affirmed the IJ's ruling, but also discussed some of the bases for the IJ's opinion, we review both the IJ's and the BIA's opinions.'" Lin v. Gonzales, 503 F.3d 4, 6-7 (1st Cir. 2007) (quoting Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007)). The IJ's factual findings and decision are reviewed under the deferential "substantial evidence" standard. Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 256 (1st Cir. 2004). Under this standard, we will uphold the decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole."[5]  Aihua Chiy Wang v. Mukasey, 508 F.3d 80,

---

[5]  Generally, findings regarding changed circumstances are considered factual determinations. Mehili v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005). In this case, the IJ's determination was

- 6 -

84 (1st Cir. 2007).

A petitioner bears the burden of establishing eligibility for asylum by demonstrating a well-founded fear of future persecution that is based on one of five statutory grounds: race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); Afful v. Ashcroft, 380 F.3d 1, 3 (1st Cir. 2004). By showing past persecution, a petitioner creates a rebuttable presumption that his fear of future persecution is well-founded. Zarouite v. Gonzales, 424 F.3d 60, 63 (1st Cir. 2005). The government can overcome this presumption by demonstrating, under a preponderance standard, that there has been a "fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution." 8 C.F.R. § 1208.13(b)(1)(i)(A).

Uruci presents four arguments in support of his contention that the IJ and BIA erred in concluding that the government rebutted the presumption that he held a well-founded fear of future persecution: (1) the 2005 Parliamentary Elections do not demonstrate a fundamental change in country conditions; (2) the State Department reports do not demonstrate a fundamental change; (3) the IJ gave credence only to the State Department reports and ignored conflicting evidence in the record; and (4) the

---

a factual one based on the 2004 State Department's Asylum Profile and Country Report.

IJ made an unsupported assumption that Uruci would not be persecuted upon return to Albania, based on an inference he drew from Veliu's testimony about her own experiences as a high-ranking Democratic Party member.

We reject Uruci's arguments because we conclude that substantial evidence supports the IJ's and BIA's determination that Uruci's well-founded fear of future persecution was rebutted by a fundamental change in Albanian country conditions.

Uruci first claims that the IJ's reliance on the 2005 elections, where the Democratic Party won a majority of seats in the National Parliament, was erroneous because it does not indicate a fundamental change which vitiates his well-founded fear. Uruci relies on Fergiste v. INS, 138 F.3d 14, 20 (1st Cir. 1998), arguing that we have recognized that a change in regime from one which was responsible for the applicant's past persecution is not sufficient to automatically rebut a presumption of a well-founded fear of future persecution. Uruci thus contends that the fact that the Democratic Party gained power does not mean that the tensions with the Socialist Party, or its loyalists, were neutralized; the Socialist Party has not been rendered powerless or lost supporters, nor is there a reason to believe that its antagonism towards the Democratic Party will lessen.

In light of the other evidence in the record, this argument lacks force. While Uruci correctly states the general

proposition from Fergiste -- that regime change alone is insufficient to rebut the presumption at issue, 138 F.3d at 20 -- the IJ relied on other ample evidence in the record, including the State Department Country Report, the Asylum Profile, witness testimony, and the Amnesty International report. The Parliamentary elections were but one piece of evidence considered in the aggregate.

Uruci next argues that the State Department's Country Report and its Asylum Profile fail to demonstrate a fundamental change. Although he concedes that the reports indicate a general improvement in conditions, Uruci argues that they also acknowledge "serious problems in several areas." Such problems included arbitrary arrest and detention, impunity, violations of citizens' rights to privacy, use of excessive force against protesters, as well as some politically motivated violence. Based on these continuing problems, Uruci maintains that there has not been a fundamental change in the country conditions.

It is true that "abstract evidence of generalized changes in country conditions, without more, cannot rebut a presumption of a well-founded fear of future persecution." Chreng v. Gonzales, 471 F.3d 14, 22 (1st Cir. 2006) (quoting Palma-Mazariegos v. Gonzales, 428 F.3d 30, 35 (1st Cir. 2005)). The presumption can be rebutted, however, if "a report demonstrates fundamental changes in the specific circumstances that form the basis of a petitioner's

presumptive fear of future persecution." Chreng, 471 F.3d at 22. Such a report "may be sufficient, in and of itself, to rebut that presumption." Id. (internal quotation marks omitted). Thus, for example, in a case involving an Albanian petitioner who alleged persecution as a Democratic Party member by the Socialist Government, we recognized that "substantial evidence culled from the [2004] State Department asylum claims report, specifically tailored to the discussion of political persecution of [Democratic Party] members by the Socialist government, supports [a] finding that the government met its burden of rebutting [a] . . . presumptive well-founded fear of persecution." Tota v. Gonzales, 457 F.3d 161, 168 (1st Cir. 2006).

In concluding that there has been a fundamental change in country conditions in Albania, the IJ appropriately focused on facts relevant to Uruci's specific claim of persecution based on his membership in the Democratic Party. The IJ first noted that violence in Albania peaked in 1997 and 1998, and has since declined. This information was gleaned directly from the Asylum Profile, which the IJ specifically quoted, in noting there has been

> [N]o major outbreak of political violence since 1998 . . . [and that] [n]either the government nor the major political parties engage in policies of abuse or coercion against their political opponents. Though serious political suppression existed in the past, there are no indications of systematic political persecution in Albania at the present time . . . . There are no indications that the Socialist party through its own organization or through government authorities is engaged in a pattern of repression or violent behavior against

- 10 -

its opponents.

Moreover, the Asylum Profile stated that the October 2000 nationwide local elections "were carried out in a calm and orderly manner with some electoral irregularities but very few incidents of violence." And it went on to say that the "Parliamentary elections of 2001 were generally peaceful."

The IJ explained that the observations of changed conditions in the State Department's reports were "corroborated somewhat by the fact that [Uruci] experienced no persecution following the mysterious shooting incident of August, 1998, and was able to peacefully and without interference travel back and forth to Greece and obtain a visa from the government for that purpose." Therefore, consistent with Tota, the Asylum Profile evidence relied on by the IJ, inasmuch as it is "specifically tailored to the discussion of political persecution of [Democratic Party] members," 457 F.3d at 168, supports the IJ's finding that the government rebutted Uruci's presumptive well-founded fear of future persecution.

Uruci's third argument is that the IJ improperly gave credence to the State Department reports, and in doing so, ignored the contrary evidence contained in the Amnesty International report, which "documented numerous incidents of torture and ill-treatment of DP [Democratic Party] supporters."

The answer to this argument is that the IJ did not ignore

the Amnesty International report.  The IJ specifically noted his review of the Amnesty International report, in addition to the government's submission of the Country Report, the Asylum Profile and documents evidencing the Democratic Party's 2005 victory in Parliamentary elections.

To be sure, country reports "are open to contradiction," Zarouite, 424 F.3d at 63, and evidence of changed country conditions contained in country reports will "not automatically trump" specific evidence presented by the petitioner.  Waweru v. Gonzales, 437 F.3d 199, 203 (1st Cir. 2006) (quoting Fergiste v. INS, 138 F.3d 14, 19 (1st Cir. 1998)).  Thus, an IJ must consider alternative evidence in the record that controverts the information and conclusions contained in the State Department's country reports.  Id. at 202 n.1.  That was done in this case.

In weighing the evidence, the IJ explained that the Amnesty International report did not "appear to rebut the conclusions of the State Department at least in terms of the claim that there is persecution by the government and/or the Socialist Party of political opponents."  Although the Amnesty International report contained evidence of ongoing human rights violations and political disputes, such evidence does not foreclose the conclusion that a fundamental change in country conditions had occurred.  In Chreng, 471 F.3d at 23, for example, we concluded that asylum was properly denied where the IJ relied on a "country report [which]

- 12 -

describe[d] ongoing human rights violations and systematic deficiencies in the political process, but . . . also outlined significant and specific improvements in the political atmosphere, as well as plausible reasons for believing that violence [of which the petitioner feared] had lessened."

Moreover, the Amnesty International report predates the State Department reports by three years. Between 1997 and 2004, the conditions in Albania were steadily improving. The 2001 Amnesty International report, however, reflected only the relations between the political parties up to the year 2000. At that time, the parties had not yet reached the level of tolerance reflected in the 2004 State Department reports.

Accordingly, we cannot say that the IJ erred when he determined that the evidence contained in the Amnesty International report was insufficient to rebut the determination of the State Department reports that a fundamental change in country conditions had occurred.

Uruci's final argument is that the IJ improperly assumed that Uruci would not be persecuted upon return to Albania based on an incorrect inference that he drew from Veliu's testimony. Uruci contends that the IJ improperly concluded that since Veliu, a high-ranking Democratic Party member, had not been persecuted herself, it would be unlikely that Uruci, a low-ranking member, would be persecuted.

This plaint overstates the IJ's reliance on that portion of Veliu's testimony. After discussing in detail the various bases for finding changed country conditions, the IJ stated that Veliu "describe[d] no events during her political activities in that town [Lushnje] that could be described as attacks and acknowledged that she was never injured in connection with the efforts to physically remove her from her office after losing the election." The IJ labeled this piece of evidence "as an aside"; it was but one piece of evidence weighed with all others in the record.

Moreover, Veliu's testimony, insofar as it reflected a lack of persecution, appears to be consistent with the information provided in the State Department reports -- that although there is still some political discord in Albania, it is not accompanied by violence. Thus, Uruci's contention that the IJ misused Veliu's testimony and thus committed reversible error is not persuasive.

Uruci's claim for protection under the Convention Against Torture also must be denied. To succeed on this claim, a petitioner must prove that it is more likely than not that he will be tortured by or with the acquiescence of a government official. Xue Deng Jiang v. Gonzales, 474 F.3d 25, 32 (1st cir. 2007). Uruci, however, points to no evidence in the record showing a likelihood that he will be tortured.

### III. Conclusion

For the reasons discussed above, the petition is denied.

**So Ordered.**