# United States Court of Appeals
## For the First Circuit

No. 09-2351

SOKRAT KRISTO NAKO, KOZET FILIPI, KRISTI SOKRAT NAKO,

Petitioners,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Andrew P. Johnson was on brief for petitioner.
Monica G. Antoun, Trial Attorney, Office of Immigration Litigation, Shelley R. Goad, Assistant Director, and Tony West, Assistant Attorney General, Civil Division, were on brief for respondent.

July 7, 2010

**LYNCH**, **Chief Judge**.  Petitioners Sokrat Nako, his wife Kozet Filipi, and his son Kristi, Albanian nationals, petition for review of a final order of the Board of Immigration Appeals (BIA), which upheld an Immigration Judge's (IJ) denial of their request for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  The IJ denied their petition, inter alia, because even assuming Nako had established a well-founded fear of future persecution based on past political persecution before he left Albania in 2001, circumstances in Albania since had so fundamentally changed that this fear was no longer well-founded.  The BIA affirmed the IJ's ruling denying asylum and withholding of removal solely on this ground; it also affirmed the IJ's conclusion that petitioners were ineligible for CAT protection.  We affirm the BIA's findings and deny the petition.

## I.

On April 26, 2001, Sokrat and Kristi Nako arrived in Boston, Massachusetts on visitor visas.  On July 12, 2001, Kozet Filipi joined them, entering through New York, New York under the Visa Waiver Program (VWP).  On October 12, 2001, weeks before his visa expired, Sokrat Nako filed an application for asylum, withholding of removal, and CAT protection, claiming he had suffered past persecution in Albania because of his political beliefs.

Four years later, on January 27, 2005, the Department of Homeland Security (DHS) initiated removal proceedings against Filipi as a VWP violator, which she did not challenge. On April 5, 2005, DHS initiated removal proceedings against Sokrat and Kristi. Sokrat and Kristi conceded removability and on December 7, 2005, Sokrat filed an amended asylum application with an IJ, claiming his wife and son as derivative beneficiaries and again requesting asylum, withholding of removal, and CAT protection.[1]

On December 17, 2007, at a hearing before the IJ, Nako testified that he had suffered past political persecution by the Socialist Party in Albania, and feared future persecution, because of his membership in the Albanian Democratic Party. He submitted newspaper articles, a State Department Country Report from 2006, and an affidavit from an Albania expert as to a different Albanian applicant for asylum discussing current political conditions to support these claims.[2] We summarize the evidence Nako presented to the IJ as follows.

Nako was born in Albania in 1963 and lived in the city of Durrës during the events in question. From 1974 until the fall of

---

[1]  Petitioner Kozet Filipi's application for asylum, initially made separately, was later consolidated with Sokrat's application to make her a derivative beneficiary of his claim. See 8 C.F.R. § 1208.3(a).

[2]  The expert concluded that the applicant had a reasonable fear of future persecution because she was a prominent female Catholic political activist in a Muslim country. Nako's circumstances are not analogous, nor has he argued as much.

the communist regime in the early 1990s, Nako and his family had faced persecution by the communist regime because of his brother's political agitation and Nako's membership in a democratic group trying to overthrow the regime. Nako admitted he had not really lived in Albania since December 1990, but returned there about twice a year.

The Socialist Party came to power in Albania in 1997, by which point Nako was a member of the opposing Democratic Party. On October 12, 1997, Nako planned to participate in a Democratic Party demonstration in Durrës to denounce the Socialist Party, but Socialist Party adversaries began looking for him and beat his relatives in order to intimidate him. That same day, Nako fled to Italy.

Nako returned to Durrës in December 2000 to participate in a demonstration. On December 8, 2000, the Democratic Party organized a city-wide protest to denounce the Socialist Party's undemocratic practices. Nako was singled out by special police forces and arrested because he was on the front lines of the demonstration. While detained, he was beaten with clubs and punched and kicked for six hours. He was warned not to try to overthrow the regime and was released. He did not seek medical treatment. The next morning, he gave an interview to the local press denouncing the Socialist regime and again fled to Italy.

Nako briefly returned to Albania on April 20, 2001, and left Italy for the United States on April 25, 2001.

Nako acknowledged that the Democratic Party currently controls Albania, but said he nonetheless still feared persecution by the Socialist Party. He said that the Democratic Party's parliamentary majority over the Socialist Party was too slim to effectively rule the country or to protect him from persecution in cities like Durrës where the Socialists won the local elections and his persecutors remained in power.

The IJ denied Nako's application in an oral decision at the end of the December 17, 2007, hearing. The IJ deemed Nako credible, but found he had not established a well-founded fear of future persecution and was not entitled to asylum or withholding of removal because he had repeatedly returned to Albania after his move to Italy, demonstrating an apparent lack of fear of future persecution.

The IJ also concluded that even assuming Nako had suffered past persecution and received the presumption of a well-founded fear of future persecution, 8 C.F.R. § 1208.13(b)(1), this presumption had been rebutted. Nako had not shown a well-founded fear of future persecution "based significantly in part on the fact that there ha[ve] been compelling changes in the government of Albania." The IJ supported this conclusion by citing details from the State Department's 2006 Country Report on Human Rights

Practices and 2006 Profile of Asylum Claims and Country Conditions for Albania (the most recent reports). These reports indicated that there were no major outbreaks of political violence in Albania since 1998, that peaceful elections had been held in 2005, that the leader of the Democratic Party had become prime minister, that the Democratic Party controlled parliament with 81 of 140 seats, and that the political parties had ceased abuse or coercion of political opponents. The reports provided no evidence of present systemic political persecution in Albania. Because Nako had not met the lesser burden for asylum, his claim for withholding of removal necessarily failed. The IJ also denied CAT protection after finding that Nako had failed to show a likelihood he would be tortured in Albania, and ordered petitioners removed to Albania.

On August 27, 2009, the BIA adopted and affirmed the IJ's denial of asylum on the basis of changed country conditions in Albania. The BIA rejected Nako's claim on appeal that the IJ failed to give sufficient weight to record evidence of country conditions, finding that the 2006 State Department Country Report and Asylum Profile were "probative evidence" of changed conditions. The BIA affirmed the IJ's rejection of withholding of removal and also affirmed the denial of CAT protection because Nako had not shown he would likely be tortured in Albania.

II.

When, as here, the BIA adopts and affirms part of the IJ's ruling and further justifies the IJ's conclusions, we review both the BIA's and IJ's opinions. Weng v. Holder, 593 F.3d 66, 71 (1st Cir. 2010).

An alien's eligibility for asylum depends on satisfying his burden to show that he is a "refugee," 8 U.S.C. § 1158(b)(1)(A) & (B), meaning that he "'has suffered past persecution or has a well-founded fear of future persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion.'" Anacassus v. Holder, 602 F.3d 14, 19 (1st Cir. 2010) (quoting Decky v. Holder, 587 F.3d 104, 110 (1st Cir. 2009)); see also 8 U.S.C. § 1101(a)(42)(A). If the applicant carries his burden of showing past persecution, he "shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 1208.13(b)(1).

The government can overcome this presumption by showing, by a preponderance of the evidence, that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." Id. § 1208.13(b)(1)(i)(A). The government must present more than generalized evidence, but a country report that "demonstrates fundamental changes in the specific circumstances that form the basis of a petitioner's

presumptive fear of future persecution . . . may be sufficient, in and of itself, to rebut that presumption." Chreng v. Gonzales, 471 F.3d 14, 22 (1st Cir. 2006) (quoting Palma-Mazariegos v. Gonzales, 428 F.3d 30, 36 (1st Cir. 2005)) (internal quotation marks omitted).

Whether such a change in country conditions has occurred is a question of fact we review under the deferential "substantial evidence" standard, asking only whether "any reasonable adjudicator would be compelled to conclude to the contrary." Bollanos v. Gonzales, 461 F.3d 82, 85 (1st Cir. 2006) (quoting Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005) (internal quotation marks omitted).

Here, substantial evidence supported the BIA's and IJ's conclusion that fundamental changes in the Albanian political situation since 2001, when Nako was last in Albania, rebutted the presumption that Nako had a well-founded fear of future persecution by his Socialist Party adversaries. The BIA and IJ considered Nako's claim of political persecution in the specific context of his membership in the Democratic Party, his fear of persecution by the Socialist Party, and his absence from Albania since 2001 when drawing conclusions from the 2006 State Department Country Report and Asylum Profile. Those reports not only indicated that the Democratic Party now controls Albania, but also thoroughly documented the cessation of politically motivated violence and

persecution by either party as well as a decline in police misconduct. This court has previously deemed these particular facts fatal to nearly identical petitions for review by other Albanian Democratic Party members who have claimed a fear of political persecution by the Socialist Party. See Uruci v. Holder, 558 F.3d 14, 19-20 (1st Cir. 2009); Alibeaj v. Gonzales, 469 F.3d 188, 193 (1st Cir. 2006); Bollanos, 461 F.3d at 86; Tota v. Gonzales, 457 F.3d 161, 166-68 (1st Cir. 2006).

Nako nonetheless contests the sufficiency of this evidence. He first argues that the IJ and BIA relied on "blanket conclusions" in the 2006 Country Report and Asylum Profile and failed to consider his individualized claim that he would be singled out if he returned to Durrës, where the Socialists won local elections and where he says the same authorities who previously persecuted him remain in power and would target him on his return. Moving elsewhere in Albania would not solve the problem, he claims, because his opponents would track him down and because Albania restricts internal migration. He also claims the Country Report, in any event, shows enduring problems in Albania, including police and prison officials' widespread abuse of detainees, a lack of fair electoral procedures, and political intimidation of journalists.

We reject these arguments. Nako's first argument ignores the IJ's and BIA's careful examination of specific facts in the

Country Report and Asylum Profile directly relevant to his fear of future persecution by the Socialist Party because of his involvement in the Democratic Party. The 2006 Asylum Profile the BIA and IJ relied upon identifies region-specific instances of political violence and persecution when they occurred, for instance noting "small-scale clashes between individual competing party supporters" in October 2003 in Himara, Albania. The conclusions in the Country Report and Asylum Profile about the lack of recent politically motivated violence and intimidation in Albania after that date do not ignore regional differences; rather, they suggest that such events have lessened across the board.

Moreover, Nako has not presented anything more than sweeping assertions as to why he would likely be singled out for persecution by the Socialist Party notwithstanding the general cessation of political violence between Socialist and Democratic Party opponents. Nako has not pointed to any concrete acts of political violence in Durrës or elsewhere that would undermine the conclusions in the Country Report and Asylum Profile. Even accepting Nako's assertion that some of the people who persecuted him in Durrës still occupy positions in the local government, it does not follow that these unnamed individuals would still seek retribution for Nako's participation in demonstrations denouncing the Socialist Party more than ten years ago in a climate where politically motivated retribution has considerably lessened.

Nako's second argument likewise fails.  He has presented no evidence compelling the finding that he would suffer continued <u>political</u> persecution as one of the Socialist Party's adversaries in the Democratic Party.  The Country Report and Asylum Profile have concluded that politically motivated persecution and intimidation is no longer a serious problem anywhere in Albania.  <u>See</u> <u>Uruci</u>, 558 F.3d at 19-20.  The BIA's conclusion that the IJ properly weighed the specific findings in these reports was supported by substantial evidence.

Finally, substantial evidence supported the denial of Nako's claim for CAT protection.  Though Nako reasserts the reasons he fears persecution on his return to Albania, none of these allegations show it is more likely than not that he would be subject to the kind of severe physical or mental pain or suffering that would constitute <u>torture</u> by or with the acquiescence of a government official.  <u>See</u> <u>Limani</u> v. <u>Mukasey</u>, 538 F.3d 25, 32 (1st Cir. 2008).  Substantial evidence supported the conclusion that the evidence was insufficient for Nako to make out a claim for CAT protection.

The petition is <u>denied</u>.

<u>          So ordered</u>.