# United States Court of Appeals
## For the First Circuit

No. 12-1886

KRISTO RUCI,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,

Torruella and Lipez, Circuit Judges.

Saher J. Macarius, Avni J. Amin, Audrey Botros, and Law Offices of Saher J. Macarius, LLC on brief for petitioner.
Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, Douglas E. Ginsburg, Assistant Director, Office of Immigration Litigation, and Rebekah Nahas, Office of Immigration Litigation, Civil Division, Department of Justice, on brief for respondent.

December 23, 2013

**TORRUELLA, <u>Circuit Judge</u>.** Petitioner Kristo Ruci seeks review of a decision of the Board of Immigration Appeals denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. Ruci contends that the Board erred in finding that the government's evidence of changed country conditions rebutted the presumption of relief raised by his past persecution on political and ethnic grounds. Because the evidence supports the Board's finding of materially changed country conditions since the petitioner's departure, we deny the petition for review.

## I. Facts and Background

Following a hearing on April 4, 2011, an Immigration Judge (IJ) accepted the following evidence and testimony as truthful.

### A. History

Kristo Ruci is a native and citizen of Albania. Although Ruci's family has resided in Albania for some time, it is Greek by origin. In 1956, Ruci's father was sentenced to sixteen years imprisonment for attempting to leave Albania for Greece. In 1965, following his father's early release from prison, Ruci was born without medical care in an internment camp in Albania where his parents were then confined. Growing up in the internment camp, Ruci was not allowed to attend school beyond a certain age and was a social outcast among the local community. His family was subject

to surveillance by the police, had its home searched frequently by officers, and was restricted from leaving the camp.

Beginning in young adulthood, Ruci became an active participant in the democratic resistance against the socialist regime. In late 1989, in June of 1990, and in March of 1991, Ruci participated in demonstrations against the Socialist Party organized by the Democratic Party and its followers. On each occasion, the demonstration was broken up by police officers who beat and arrested the demonstrators. In June of 1990, Ruci himself was arrested, severely beaten, and instructed to denounce his allegiances to the Democratic Party. In March of 1991, Ruci was again beaten and detained for several days by the police.

Although the Democratic Party won the general elections in 1992, by 1997 the Socialist Party regained control of the Parliament. The 1997 election led to a period of unrest, including the 1998 assassination of a prominent Democratic politician. In October of 2000, Ruci was warned by members of the Socialist Party that he should leave the Democratic Party or else face death. In November of 2001, Ruci had to be hospitalized overnight after he was attacked by two masked men, who beat him and ordered him to leave the Democratic Party. In February of 2002, unknown individuals fired upon Ruci's home while Ruci, his wife, and his two children were inside.

Following the February 2002 incident, Ruci and his family decided to leave Albania.  On May 4, 2002, Ruci entered the United States illegally using a fraudulent passport.  In the meantime, Ruci's wife and children left Albania for Greece, where they obtained visas to join Ruci in the United States.  Ruci and his family currently reside in Massachusetts.

In 2005, several years following Ruci's departure, police officers came to his father's home in Albania to inquire about Ruci's whereabouts and when he would return to Albania.  This is the final incidence of political targeting of Ruci identified in the record. In 2007, the Democratic Party won the Albanian general elections.  The party remains in power today.

## B.  Proceedings

On September 19, 2002, the Department of Homeland Security (DHS) served Ruci with a Notice to Appear, charging him with removal under 8 U.S.C. § 1227(a)(1)(A) as an alien inadmissible at the time of entry.  Ruci conceded his removability, but filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

On April 4, 2011, an IJ denied Ruci's applications.  The IJ found that Ruci had established that he had suffered past persecution in Albania on the basis of both his political sympathies and his Greek background, and was consequently entitled to a presumption of a well-founded fear of future persecution.

-4-

However, the IJ concluded that the DHS's submitted evidence, most notably a 2009 Department of State country report on Albania, was sufficient to rebut the presumption. With regard to political persecution, the IJ noted that, since the Democratic Party's return to power in 2007, politically motivated detentions and disappearances had ceased, former political prisoners under the socialist regime were receiving compensation, and national political parties operated freely. With regard to ethnic persecution, the IJ noted that several Greek politicians now served on the Parliament and in the executive branch, that Greeks were officially the largest national minority in Albania, and that Greek Albanians were able to pursue grievances through the government on issues such as electoral zones, Greek language education, and property rights. Having found that the record rebutted the presumption of a well-founded fear of persecution for the purposes of Ruci's asylum claim, the IJ concluded that Ruci had failed to demonstrate a likelihood of persecution for the purposes of withholding of removal or a likelihood of torture for his CAT claim.

The Board of Immigration Appeals (BIA) affirmed. While recognizing that the 2009 country report suggested continuing concerns about "general police corruption" in Albania, the BIA agreed with the IJ that both the 2009 report and an earlier 2006 country report indicated that country conditions in Albania both

-5-

for supporters of the Democratic Party and for ethnic Greeks had stabilized since Ruci's departure. Based on this finding, the BIA affirmed the IJ's denial of both asylum and withholding of removal. Finally, the BIA agreed that Ruci had failed to establish a likelihood of torture by or with the acquiescence of government officials upon his return.

Ruci now petitions this court for review.

## II. Discussion

We review the BIA's legal conclusions de novo, giving appropriate deference to the BIA's interpretation of immigration statutes in accordance with administrative law principles. Castaneda-Castillo v. Holder, 638 F.3d 354, 362 (1st Cir. 2011). We review the BIA's findings of facts only under a "substantial evidence" standard, upholding the agency's decision "unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quoting 8 U.S.C. § 1252(b)(4)(B)); see also Bonilla v. Mukasey, 539 F.3d 72, 76 (1st Cir. 2008). A material change in country circumstances is a fact reviewed under the substantial evidence standard. Nako v. Holder, 611 F.3d 45, 49 (1st Cir. 2010). When, as here, the BIA partly adopts the IJ's ruling in addition to engaging in its own analysis, we review both the BIA's and the IJ's rationales. Id. at 48.

## A. Asylum

To establish eligibility for asylum, an alien "must demonstrate a well-founded fear of future persecution based on race, religion, nationality, membership in a particular social group or political opinion." Tasya v. Holder, 574 F.3d 1, 3 (1st Cir. 2009). An applicant who shows that he has suffered past persecution on a protected ground raises a presumption of a well-founded fear of future persecution. Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 21 (1st Cir. 2004); Bonilla, 539 F.3d at 76. The government may then rebut that presumption through a preponderance of evidence showing that "conditions in the country of the applicant's nationality have changed such that the applicant no longer has a well-founded fear of persecution." Yatskin v. I.N.S., 255 F.3d 5, 9 (1st Cir. 2001) (internal quotation marks omitted).

The BIA's conclusion that Ruci's presumption of a well-founded fear of both political and ethnic persecution was rebutted by changed country circumstances is supported by substantial evidence on the record. As the IJ found and the BIA echoed, the Democratic Party has been in power in Albania since 2007. In these years, the country has witnessed a halt in political detentions, the government has created procedures to compensate past victims of the socialist regime and to repatriate political refugees, and a variety of political parties operate without interference from the

-7-

government. While neither side challenges the fact that Ruci's past experiences in Albania with the Socialist Party constituted political persecution, all these events--including the most recent 2005 incident--occurred years before the Democratic Party rose to power. Furthermore, although Ruci has testified to a genuine fear that he may be targeted by Socialist sympathizers upon his return, the record before the IJ and the BIA adduces no instances of anti-Democratic persecution since the 2007 election.[1] Faced with roughly identical evidence, this court has consistently upheld the BIA's conclusions that the increasingly stable political conditions in Albania since the early 2000s undermine an applicant's well-founded fear of persecution by Socialist Party adversaries. See, e.g., Nako, 611 F.3d at 49 (finding that "fundamental changes in the Albanian political situation since 2001, when Nako was last in Albania, rebutted the presumption that Nako had a well-founded fear of future persecution by his Socialist Party adversaries"); Uruci v. Holder, 558 F.3d 14, 19-21 (1st Cir. 2009).

As to Ruci's presumption of a well-founded fear of persecution based on his Greek origins, the IJ found and the BIA

---

[1] While the 2009 State Department report notes the 2009 killing of the Democratic politician Aleks Keka, the report simultaneously mentions the death of Socialist leader Fatmir Xhindi and concludes that both incidents "were under investigation and remained unresolved." Absent any evidence tying Keka's death to broader anti-Democratic violence, nor even any evidence suggesting that Keka's death was politically motivated, this isolated event does not suffice to rebut the IJ's and the BIA's conclusion.

-8-

echoed that the 2009 Report indicates vastly improved conditions for Greeks in Albania. Members of the Greek community currently serve in the Parliament and in ministerial and sub-ministerial positions in the executive department. While acknowledging that certain minorities, such as Balkan-Egyptions, Roma, and homosexuals, continue to face harassment in Albania, the IJ noted that Greeks constitute the country's largest minority group and routinely turn to the government to protect their political, cultural, and property interests. Ruci has presented no evidence to contest the IJ's and the BIA's conclusions that the current Albanian government neither participates in nor sanctions violence against the Greek community, nor even that private parties engage in such violence.

Based on the record, and under our deferential standard of review, we cannot hold that the BIA erred in concluding that changed country conditions in Albania rebutted Ruci's presumption of a well-founded fear of persecution based on either political opinion or ethnicity.

### B. Withholding of Removal

An applicant for withholding of removal faces a higher burden than an applicant for asylum. Where asylum requires a well-founded fear of persecution, an applicant for withholding of removal must establish that "he is more likely than not to face persecution on account of race, religion, nationality, membership

in a particular social group, or political opinion."  Salazar v. Ashcroft, 359 F.3d 45, 52 (1st Cir. 2004) (emphasis in original). As in the case of asylum, an applicant may raise a rebuttable presumption in his favor by showing that he has suffered past persecution on a protected ground.  See Bonilla, 539 F.3d at 76. The government "then bears the burden of rebutting the presumption through proof of . . . a fundamental change in circumstances eliminating the likelihood of persecution."  Sok v. Mukasey, 526 F.3d 48, 53 (1st Cir. 2008).

The same evidence that rebutted Ruci's presumption of a well-founded fear of persecution for the purposes of his asylum claim necessarily also rebutted his presumption of a likelihood of persecution for the purposes of withholding of removal.  For the reasons discussed above, the BIA did not err in denying Ruci's application.

### C.  CAT Protection

To qualify for protection under the Convention Against Torture, an alien must establish that "it is more likely than not" that he will be tortured if he is returned to his homeland. Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004) (internal quotation marks omitted).  "Torture" under the act is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the acquiescence of a public official or other person acting in an

official capacity." Hincapie v. Gonzales, 494 F.3d 213, 220 (1st Cir. 2007) (quoting 8 C.F.R. § 208.18(a)(1)) (internal quotation marks omitted).

Ruci has presented no evidence to suggest that he may face torture by or with the consent of a public official upon his return. To the extent that his political persecution claim is based on his sympathies for the Democratic Party--the very party currently in power--the record fails to support any reasonable fear of harm by government officials. While Ruci protests that the IJ's and the BIA's denials of CAT protection were overly cursory, both agencies explicitly justified their denials based on the record's failure to present any evidence regarding Ruci's fear of torture by the government. Furthermore, the IJ's and the BIA's conclusions with regard to Ruci's CAT claim follow directly from their foregoing analyses of Ruci's asylum and withholding claims. See Gjiknuri v. Mukasey, 259 F. App'x 338, 341 (1st Cir. 2008) ("Although the BIA did not explicitly connect its analysis of fundamentally changed conditions to whether the Gjiknuris will more likely than not face torture if returned to Albania, its analysis applies equally to the likelihood of future torture as it does to future persecution."). The BIA did not err in denying Ruci's claim for protection under CAT.

### III.  Conclusion

For the foregoing reasons, the petition for review is <u>denied</u>.