# United States Court of Appeals
## For the First Circuit

No. 14-2042

JOSE RICARDO PERALTA SAUCEDA,

Petitioner,

v.

LORETTA E. LYNCH,[*]
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Brian P. Goldman, with whom Robert M. Loeb, Thomas M. Bondy, Orrick, Herrington & Sutcliffe LLP, Carlos E. Estrada, and Estrada Law Office were on brief, for petitioner.
Leon Fresco, Deputy Assistant Attorney General, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Donald E. Keener, Deputy Director, and Patrick J. Glen, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, were on brief, for respondent.
Jayashri Srikantiah, Lisa Weissman-Ward, Immigrants' Rights Clinic, Mills Legal Clinic, Stanford Law School, Manuel Vargas, Andrew Wachtenheim, and Immigrant Defense Project, on brief for

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr., as the respondent.

Immigrant Defense Project, National Immigration Project of the National Lawyers Guild, American Immigration Lawyers Association, Detention Watch Network, Committee for Public Counsel Services, New Hampshire Association of Criminal Defense Lawyers, Maine Association of Criminal Defense Lawyers, Political Asylum/Immigration Representation Project, Harvard Immigration and Refugee Clinical Program, Boston University Immigrants' Rights Clinic, Suffolk University Law School Immigration Clinic, Post-Deportation Human Rights Project, Ninth Circuit Appellate Project at Boston College School of Law, and Professors Mary Holper, Irene Scharf, and Anna Welch, amici curiae in support of petitioner.

-----

April 22, 2016

-----

**LYNCH**, **Circuit Judge**.  Jose Ricardo Peralta Sauceda, who entered the United States illegally in 1993 from Honduras, conceded in 2007 that he was removable but requested cancellation of removal.  He now petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of an immigration judge's ("IJ") decision that he was not eligible for cancellation of removal, based on extreme hardship to his wife and son, because he had failed to meet his burden of proving by a preponderance of the evidence that he had not previously been "convicted of" a "crime of domestic violence" in 2006.  See 8 U.S.C. §§ 1227(a)(2)(E)(i), 1229b(b)(1)(C).

Peralta Sauceda and the government agree that the competent evidence that exists regarding his 2006 Maine conviction for assault cannot definitively show whether Peralta Sauceda was in fact convicted of a "crime of domestic violence," as defined by federal law.  In an initial opinion, now withdrawn, we had denied his petition for review, based on the arguments then before us. See Peralta Sauceda v. Lynch, 804 F.3d 101 (1st Cir. 2015), reh'g granted, opinion withdrawn by Sauceda v. Lynch, No. 14-2042, 2016 WL 760293 (1st Cir. Feb. 3, 2016).

Peralta Sauceda petitioned for rehearing and for the first time presented a developed argument based on the Supreme

- 3 -

Court's decision in <u>Moncrieffe</u> v. <u>Holder</u>, 133 S. Ct. 1678 (2013).[1]

We granted rehearing and took additional briefing from the parties.

<u>See</u> <u>Sauceda</u>, 2016 WL 760293, at *1.  We also acknowledge the

helpful briefs amici curiae filed.

We are now convinced, despite strong arguments to the

contrary by the respondent, that the issue before us is one of law

and that <u>Moncrieffe</u> requires us to reach a different outcome than

before.  So we grant the petition and remand to the agency.

I.

Peralta Sauceda, a native and citizen of Honduras,

entered the United States illegally on December 23, 1993, when he

was 29 years old.  He is now 52 years old, has lived in the United

States for over 22 years, and is married to Hattie, a U.S. citizen

who is disabled and relies on her husband for care.  He has a

teenage son, also a U.S. citizen, from a prior relationship.  His

son suffers from a variety of medical and emotional problems.

---

[1]  We are satisfied that this argument was adequately raised in Peralta Sauceda's initial petition so as not to be waived on rehearing.

The government argued in its opposition to Peralta Sauceda's petition for rehearing that an argument raised by amici concerning whether and to what extent the government bears a burden of production under 8 C.F.R. § 1240.8(d) was never adequately raised by Peralta Sauceda, <u>see</u> <u>Albathani</u> v. <u>INS</u>, 318 F.3d 365, 375 n.6 (1st Cir. 2003)(noting that "amici may not present legal theories not argued by the parties"), and was not presented to the agency and was therefore unexhausted, <u>see</u> <u>Meng Hua Wan</u> v. <u>Holder</u>, 776 F.3d 52, 56 (1st Cir. 2015).  As we explain below, whether or not this issue is waived, we need not reach it.

On December 11, 2006, Peralta Sauceda pleaded guilty to Count One of a criminal complaint that charged him with assaulting his wife in violation of Me. Rev. Stat. Ann. tit. 17-A, § 207(1)(A). That section states that "[a] person is guilty of assault if: A. The person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." He was sentenced to 180 days of imprisonment, which was suspended in full, served no time in prison, and served one year of probation.

On August 29, 2007, Peralta Sauceda was served by the Department of Homeland Security with a Notice to Appear that charged him with being an alien present in the United States without being admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). At a preliminary hearing, he conceded removability and requested cancellation of removal, which was based on a claim that his removal would cause extreme hardship to Hattie and his son. See id. § 1229b(b)(1).[2] At the July 29, 2009,

_____

[2]    8 U.S.C. § 1229b(b)(1) establishes four eligibility requirements for certain nonpermanent residents applying for cancellation of removal:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--
>      (A) has been physically present in the United States for a continuous period of not less than 10 years immediately

- 5 -

merits hearing before the IJ, the question was raised whether his Maine assault conviction qualified as a "crime of domestic violence" under 8 U.S.C. § 1227(a)(2)(E)(i). If so, the conviction disqualified him from eligibility for cancellation of removal. See id. § 1229b(b)(1)(C). The IJ was sympathetic to his extreme hardship claim, finding that he had shown his removal would cause extreme hardship to Hattie and his son.[3] See id. § 1229b(b)(1)(D). She also found that Peralta Sauceda had taken responsibility for assaulting Hattie, had sought help for his drinking, and that there had been no prior or further attacks on Hattie.

The effect of Peralta Sauceda's 2006 conviction on his eligibility for cancellation of removal remained an open question,

---

> preceding the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).

[3] The IJ found that Peralta Sauceda had also satisfied the continuous physical presence requirement. See 8 U.S.C. § 1229b(b)(1)(A). The IJ, however, never made a finding, in the context of Peralta Sauceda's application for cancellation of removal, regarding the final eligibility requirement of "good moral character." Id. § 1229b(b)(1)(B).

and a series of appeals to and remands from the BIA followed.  The BIA concluded that the modified categorical approach[4] must be applied to the Maine assault statute.  On September 19, 2013, the IJ issued her final order, pretermitting Peralta Sauceda's application for cancellation of removal because he was not eligible.  In performing the modified categorical approach analysis, the IJ found that the record as presented showed that Peralta Sauceda had pleaded guilty to committing a domestic violence crime, but that "the record of conviction documents d[id] not clarify" whether he was convicted under the "bodily injury" prong or the "offensive physical contact" prong of the Maine statute.[5]  The BIA had held in a prior order that only a conviction under the "bodily injury" prong would qualify as a federal "crime

---

[4]    Under the categorical approach, we ask "whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a" disqualifying offense.  Moncrieffe, 133 S. Ct. at 1684 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186 (2007)); see also Welch v. United States, No. 15-6418, 2016 WL 1551144, at *3 (U.S. Apr. 18, 2016).  When a "statute is 'divisible' -- i.e., comprises multiple, alternative versions of the crime," courts may use the modified categorical approach and "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of . . . conviction."  Descamps v. United States, 133 S. Ct. 2276, 2284 (2013).

[5]    The IJ had previously issued an order to the parties on July 23, 2013, granting them additional time to provide "any other part of the record of conviction" that could clarify under which prong he was convicted.  Peralta Sauceda informed the IJ on August 1, 2013, that he was unable to secure any other documents because the Superior Court of the county where he was convicted does not, in misdemeanor cases, maintain copies of the documents he needed.

of domestic violence" and render him ineligible for cancellation of removal.  The IJ held that because Peralta Sauceda had failed to produce Shepard[6] documents showing that his 2006 assault conviction was not a "crime of domestic violence," he had failed to meet his burden of proving eligibility for cancellation of removal.  See Shepard v. United States, 544 U.S. 13, 16, 26 (2005).  That burden was placed on him by statute and regulation.  See 8 U.S.C. § 1229a(c)(4)(A); 8 C.F.R. § 1240.8(d).[7]  The BIA affirmed.  Peralta Sauceda's petition for review followed.

---

[6]    Shepard documents include "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  Shepard v. United States, 544 U.S. 13, 16 (2005).

[7]    In removal proceedings, the statute provides, in relevant part, that "[a]n alien applying for relief or protection from removal has the burden of proof to establish that the alien -- (i) satisfies the applicable eligibility requirements."  8 U.S.C. § 1229a(c)(4)(A).  The applicable regulation similarly states:

> The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion.  If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

8 C.F.R. § 1240.8(d).

Since "the BIA adopted and affirmed the IJ's ruling, and discussed some of the bases for the IJ's opinion, we review both the BIA's and IJ's opinions." Idy v. Holder, 674 F.3d 111, 117 (1st Cir. 2012). We review legal conclusions de novo, while affording "appropriate deference to the BIA's interpretation of immigration statutes." Ruci v. Holder, 741 F.3d 239, 242 (1st Cir. 2013).

We start with the areas of agreement. Both parties agree that the Maine statute is divisible and that, accordingly, the modified categorical approach is the proper way to analyze the case. See Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). Both parties agree that only a conviction under the "bodily injury" portion of the Maine statute would qualify as a "crime of domestic violence" and render Peralta Sauceda ineligible for cancellation of removal. Both parties agree that the only Shepard documents that the State of Maine maintained are the criminal complaint and the judgment reflecting his guilty plea. Both parties agree that the Shepard documents that exist are unable to help identify the prong of the Maine statute under which Peralta Sauceda was convicted.

In Moncrieffe, the Supreme Court established a presumption that dictates the outcome of this case: "Because we examine what the state conviction necessarily involved, not the

facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense."  Moncrieffe, 133 S. Ct. at 1684 (alterations in original) (quoting Johnson v. United States, 559 U.S. 133, 137 (2010)); see also Descamps, 133 S. Ct. at 2284 ("[A] conviction based on a guilty plea can qualify as [a predicate offense] only if the defendant 'necessarily admitted [the] elements of the generic offense.'" (third alteration in original) (quoting Shepard, 544 U.S. at 26)).

The Court in Moncrieffe explained that this "least of the acts" presumption is not absolute and that in the case of a divisible statute, like the Maine assault statute, "a court may determine which particular offense the noncitizen was convicted of by" looking to Shepard documents, which may rebut the presumption. Moncrieffe, 133 S. Ct. at 1684.  But where, as here, it is undisputed that all the Shepard documents have been produced and that they shed no light on the nature of the offense or conviction, the Moncrieffe presumption must stand since it cannot be rebutted.[8] We must defer to this presumption.

---

[8]    Because all the Shepard documents were produced, and, as a matter of law, the Moncrieffe presumption cannot be rebutted, we need not reach the nettlesome question, posed in our order granting rehearing, of whether and to what extent the government bears a burden of production under 8 C.F.R. § 1240.8(d) in the case of a divisible state statute.  See Sauceda, 2016 WL 760293, at *1.

- 10 -

The government responds that there is still uncertainty as to whether Peralta Sauceda, in fact, pleaded guilty to a "crime of domestic violence," and that he has not met the burden of proving that he did not.[9]  While there may be factual uncertainty on this score, that is not the question that Congress or the Supreme Court has directed us to answer.  Rather, the question is whether, as a matter of law, under these precise circumstances, Peralta Sauceda was "convicted of" a "crime of domestic violence."  See 8 U.S.C. § 1229b(b)(1)(C).  As to this question, given Moncrieffe, there is no uncertainty.  We hold that since all the Shepard documents have been produced and the modified categorical approach using such documents cannot identify the prong of the divisible Maine statute under which Peralta Sauceda was convicted, the unrebutted Moncrieffe presumption applies, and, as a matter of law, Peralta Sauceda was not convicted of a "crime of domestic violence."[10]

---

[9]    The IJ took testimony from Peralta Sauceda and Hattie, and, in her July 29, 2009, decision, the IJ determined from her own evaluation of the testimony that Peralta Sauceda "knew at the time he attacked his wife that she was suffering from severe back and neck problems, and despite his own emotional state, pushed her to the ground and dragged her around."  In a later decision on September 9, 2009, the IJ similarly found that Peralta Sauceda "did, in fact, physically assault and batter his wife by 'grabbing her by the arms or by the hair and dragging her to the ground.'"

[10]    Our approach and outcome is consistent with Almanza-Arenas v. Lynch, 815 F.3d 469, 487–89 (9th Cir. 2016) (en banc) (Watford, J., concurring); Thomas v. Att'y Gen. of U.S., 625 F.3d 134, 141–48 (3d Cir. 2010); Martinez v. Mukasey, 551 F.3d 113,

- 11 -

III.

The government raises several arguments in support of its position. Supreme Court precedent compels us to reject them all.

The government asserts, without any on-point authority in support, that "Shepard-approved documents do not exhaust the range of evidence the agency may consider in assessing whether an alien has been 'convicted' of a disqualifying offense." It suggests that Peralta Sauceda could have submitted testimony from his lawyer, his wife (the victim), or the judge who accepted his plea to ascertain what offense was charged and pleaded to in the state court.

We disagree. As the Supreme Court in Descamps repeatedly observed in referring to "a restricted set of materials," 133 S. Ct. at 2284, and "approved documents," id. at 2285 n.2, the universe of information capable of narrowing the offense of conviction under a divisible statute does not include in any other relevant context the type of information to which the government points. We have not been presented with any compelling reason to expand that universe in this context. The type of information the

---

121–22 (2d Cir. 2008). But see Syblis v. Att'y Gen. of U.S., 763 F.3d 348, 355–57 (3d Cir. 2014); Sanchez v. Holder, 757 F.3d 712, 720 & n.6 (7th Cir. 2014); Young v. Holder, 697 F.3d 976, 988–90 (9th Cir. 2012) (en banc); Salem v. Holder, 647 F.3d 111, 116–20 (4th Cir. 2011); Garcia v. Holder, 584 F.3d 1288, 1289–90 (10th Cir. 2009).

government wishes to interject into the process would turn an essentially objective, legal assessment of court documents into a factual, credibility-assessing adjudicative minitrial.[11]

The government's proposal here echoes a similar government proposal squarely rejected by the Supreme Court in Moncrieffe. There, the government had proposed that "[n]oncitizens should be given an opportunity during immigration proceedings to demonstrate that their predicate marijuana distribution convictions involved only a small amount of marijuana and no remuneration, just as a federal criminal defendant could do at sentencing." Moncrieffe, 133 S. Ct. at 1690. To be sure, the government here is making the finer point that the agency may look to non-Shepard documents to determine what the petitioner pleaded guilty to during the state court proceedings, not to determine the facts of his underlying crime. In the end, though, these analogous proposals implicate the same set of concerns. As the Court recognized, "[t]he categorical approach serves 'practical' purposes: It promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials

---

[11]  Our holding here is consistent with prior First Circuit immigration cases. See Villanueva v. Holder, 784 F.3d 51, 54 (1st Cir. 2015) (citing Shepard, 544 U.S. at 26, and noting that under the modified categorical approach only "certain documents in the record of conviction" can be examined); Berhe v. Gonzales, 464 F.3d 74, 85 (1st Cir. 2006).

conducted long after the fact."[12]  Id. (citing Chambers v. United States, 555 U.S. 122, 125 (2009)).  Much like the government's proposal in Moncrieffe, the government's proposal here that courts consider non-Shepard evidence of what occurred at the entry of the plea "would have our Nation's overburdened immigration courts entertain and weigh testimony . . . .  And, as a result, two noncitizens, each 'convicted of' the same offense, might obtain different aggravated felony determinations depending on what evidence remains available or how it is perceived by an individual immigration judge."  Id.  As the Supreme Court noted, "[t]he categorical approach was designed to avoid this 'potential unfairness.'"[13]  Id. (quoting Taylor v. United States, 495 U.S. 575, 601 (1990)).

The government also argues that Moncrieffe's presumption is inapplicable in this context because by its terms Moncrieffe is

---

[12]   We share the concern expressed in Shepard that expanding the universe of documents that may be considered "amounts to a call to ease away from the Taylor conclusion, that respect for congressional intent and avoidance of collateral trials require that evidence of generic conviction be confined to records of the convicting court approaching the certainty of the record of conviction in a generic crime State."  Shepard, 544 U.S. at 23 (citing Taylor v. United States, 495 U.S. 575 (1990)).

[13]   The conclusion reached in Moncrieffe was not a novel one.  Indeed, the Court's favorable citation to United States ex rel. Mylius v. Uhl, 210 F. 860, 862-63 (2d Cir. 1914), see Moncrieffe, 133 S. Ct. at 1690, belies any notion that the justifications for restricting courts to the record of conviction in the immigration context are of recent vintage.

a case about removability vel non, and is not concerned with exceptions to removability.  It argues that while it is true that the government always bears the burden of proving removability, see 8 U.S.C. § 1229a(c)(3)(A), the issue here of eligibility for relief from removal is different and the burden, by statute, is on the petitioner, see id. § 1229a(c)(4)(A); see also 8 C.F.R. § 1240.8(d).

We cannot agree.  First, the categorical approach -- with the help of its modified version -- answers the purely "legal question of what a conviction necessarily established."  See Mellouli v. Lynch, 135 S. Ct. 1980, 1987 (2015).  As a result, the question of the allocation of the burden of proof when the complete record of conviction is present does not come into play.  Second, Moncrieffe explicitly stated that its "analysis is the same in both contexts," i.e., removal and cancellation of removal.  133 S. Ct. at 1685 n.4.  This conclusion follows from the fact that the underlying statutory language is the same in both contexts. Congress has directed the courts to determine what the alien was "convicted of."  Compare 8 U.S.C. § 1229b(b)(1)(C) ("The Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien . . . (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title." (emphasis added)), with 8 U.S.C. § 1227(a)(2)(E)(i) ("Any alien who at any time after

admission is <u>convicted of</u> a crime of domestic violence . . . is deportable." (emphasis added)). As the Court in <u>Moncrieffe</u> noted, "'[c]onviction' is 'the relevant statutory hook.'" 133 S. Ct. at 1685 (quoting <u>Carachuri-Rosendo</u> v. <u>Holder</u>, 560 U.S. 563, 580 (2010)). And what the Court made clear was that the term "convicted of" has a formal, legal definition governed by the presumption explained above, and that definition is uniform as between the removal and cancellation of removal provisions of the Immigration and Nationality Act ("INA").

The government also argues that <u>Moncrieffe</u> is inapplicable because it focused on the categorical approach, not the modified categorical approach, and so its holding is not on point. We conclude that Supreme Court precedent precludes us from accepting this argument. The modified categorical approach is not a wholly distinct inquiry. Rather, as the Supreme Court has explained, it "merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool." <u>Descamps</u>, 133 S. Ct. at 2285. Whether a statute of conviction is divisible or not does not change the basic character of the inquiry; the question remains a legal one to which the presumption from <u>Moncrieffe</u> -- if unrebutted by <u>Shepard</u> documents -- still applies.

The government, stressing the limited number of green cards Congress has authorized the immigration agency to issue in a given year for aliens granted cancellation of removal and adjustment of status, see 8 U.S.C. § 1229b(e)(1),[14] emphasizes the fact that Congress intentionally placed the burden of proof on aliens seeking what the government calls its "largesse" in the form of discretionary relief from removal.  Our holding does not relieve an alien applying for relief of any burden.  Indeed, an alien who is found, as a matter of law, not to have been convicted of a disqualifying offense must still prove continuous physical presence, good moral character, and "exceptional and extremely unusual hardship."  See id. § 1229b(b)(1)(A), (B), (D); see also Moncrieffe, 133 S. Ct. at 1692 ("[H]aving been found not to be an aggravated felon, the noncitizen may seek relief from removal . . . assuming he satisfies the other eligibility criteria.").

The Supreme Court in Moncrieffe laid out the framework for determining whether an alien was "convicted of" a disqualifying offense.  It expressly recognized that the relevant statutory language in the INA is identical in the removal and cancellation of removal contexts, and so the "analysis is the same in both

---

[14]     "[T]he Attorney General may not cancel the removal and adjust the status under this section, nor suspend the deportation and adjust the status under section 1254(a) of this title (as in effect before September 30, 1996), of a total of more than 4,000 aliens in any fiscal year."  8 U.S.C. § 1229b(e)(1).

contexts." Moncrieffe, 133 S. Ct. at 1685 n.4. And we have rejected the government's earlier arguments that Moncrieffe is inapplicable to the circumstances presented by this case, finding instead that Moncrieffe controls. The government urges that this outcome is simply not what Congress intended. If the government is right, and Congress intended otherwise and disagrees with Moncrieffe, then Congress can overrule the Court and change how the courts are to analyze these cases. We, however, cannot.

## IV.

Accordingly, we grant the petition for review, vacate the BIA's decision, and remand to the agency for further proceedings consistent with this opinion.