# United States Court of Appeals
## For the First Circuit

No. 13-2271

JUAN CARLOS SHUL-NAVARRO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Howard, Thompson and Barron,

Circuit Judges.

Michael Haven and Genzale & Haven, LLP on brief for petitioner.
C. Frederick Sheffield, Office of Immigration Litigation, Civil Division, Department of Justice, Stuart F. Delery, Assistant Attorney General, Civil Division, and John W. Blakeley, Senior Litigation Counsel, on brief for respondent.

August 11, 2014

**BARRON, <u>Circuit Judge</u>.** Petitioner Juan Carlos Shul-Navarro, a native and citizen of El Salvador, seeks review of a Board of Immigration Appeals decision that dismissed his appeal from an Immigration Judge's order that would remove him from the United States.[1] The key issue concerns whether Shul showed that he qualifies for a special status that -- due to a determination the Attorney General made about unsafe conditions in his home country -- would afford him protection from being sent back to El Salvador. Because neither the Board nor the Immigration Judge provided a sufficient explanation for finding that Shul failed to make that necessary showing, we vacate and remand for further proceedings.

I.

Shul entered the United States without inspection at an unconfirmed time, and on May 14, 2001 he submitted an application for what is known as "temporary protected status." That status affords aliens protection from removal from the United States upon a determination by the Attorney General that conditions in the alien's home country prevent the alien's safe return. 8 U.S.C. § 1254a. The Attorney General made the triggering designation about Shul's home country, El Salvador, after two large earthquakes

---

[1] The Board also dismissed Shul's "motion to reconsider," which it treated as a motion to remand given the motion's submission during the pendency of the appeal. In his petition to this Court, Shul failed to address the Board's rationale in denying the motion or even to mention the motion at all. The issue is therefore waived. <u>See</u> <u>Dawoud</u> v. <u>Holder</u>, 561 F.3d 31, 37 (1st Cir. 2009).

-2-

struck that country.  Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001).

As a result of that designation, Shul may qualify for temporary protected status by showing, among other things, that he has ties to the United States that started to run from certain dates that had been set by the Attorney General.  More specifically, Shul must show (1) that he has been continuously physically present in the United States since the effective date of the Attorney General's designation of El Salvador as a country whose nationals may qualify for temporary protected status, and (2) that he has continuously resided in the United States as of a separate date that the Attorney General also designated.  8 U.S.C. § 1254a(c)(1)(A); Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001).  By virtue of the Attorney General's designations regarding El Salvador, Shul must prove continuous presence in this country as of March 9, 2001 and continuous residence as of February 13, 2001.

Before deciding whether to grant Shul temporary protected status, the Department of Homeland Security requested that he provide additional supporting documentation.  Shul did so, but the Department denied Shul's application on November 13, 2003.  Shul was then not served with a Notice to Appear for removal proceedings until 2009.  At that point, Shul filed a renewed application for temporary protected status with the immigration court.  Although

Shul provided new evidence at that time, the Immigration Judge, like the Department, found his showing insufficient.[2]  Shul thus appealed to the Board of Immigration Appeals, which reached the same result.

## II.

Neither the Immigration Judge nor the Board set forth as precisely as we might wish the exact basis for their judgment that Shul does not qualify for temporary protected status. The ambiguity, such as it is, concerns the scope of that judgment.  We first must decide, therefore, what the agency decided so we can determine what we must review.  Specifically, we must resolve whether the Immigration Judge and the Board determined only that Shul failed to show he was in the United States early enough to qualify for temporary protected status or whether they also determined that, even if he was in the United States in time, he failed to show that he maintained a sufficient connection to the country in the months and years that followed.  We thus begin by parsing the agency's decisions with this question in mind.  See SEC v. Chenery Corp., 332 U.S. 194, 197 (1947) ("If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be

_____

[2] The Immigration Judge also denied Shul's voluntary departure claim, citing to Shul's conviction for marijuana possession, numerous arrests between 2003 and 2007, and association with a violent street gang.  Shul does not challenge this discretionary decision.

understandable. . . . In other words, 'We must know what a decision means before the duty becomes ours to say whether it is right or wrong.'") (quoting United States v. Chicago, M., St. P. & P.R. Co., 294 U.S. 499, 511 (1935)).

### A.

We start with the opinion of the Immigration Judge because the Board affirmed her decision "for the reasons" that she provided. See Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009). The introduction to the Immigration Judge's analysis makes clear she made at least one finding: namely, that, in her view, the earliest "reliable" evidence "showing [Shul] in the United States is his filing of" his initial application for temporary protected status "on May 14, 2001." In our view, the rest of her analysis most naturally reads as an explanation of why she believes the evidence Shul submitted fails to support a contrary finding on that one key point. And, for that reason, we read her opinion -- as well as the Board's opinion affirming it -- to rest solely on that factual finding and not on an additional and independent finding that, even if Shul were in the country earlier, his ties to this country thereafter were insufficiently continuous. Cf. Waweru v. Gonzales, 437 F.3d 199, 204 (1st Cir. 2006) (explaining that "clarity is a matter of degree," and, as such, "the normal question[s]" upon review of agency action are "whether the evidence

-5-

supports the conclusion and whether the agency's basic rationale is clear enough to permit review").

The structure of the Immigration Judge's opinion supports this reading. She begins the introduction to her analysis by stating that the Department of Homeland Security's "finding" that Shul does not qualify for temporary protected status should be affirmed. She also states that, in her view, Shul's initial application for temporary protected status represents the "earliest evidence that is reliable" about his presence in this country. She then notes that Shul did testify that he arrived in the United States earlier. Specifically, she explains that Shul testified that he entered the United States in September 1999 -- "exact date unknown" -- and that "he never left." But she concludes the introduction to her analysis by stating that Shul "has no documentary proof of such" and that "conflicting evidence in the record" leads her to "have some concerns about the credibility of his testimony."

In light of this set up, the paragraphs that follow in the Immigration Judge's opinion appear to represent an effort to detail the deficiencies in Shul's evidence of being in the United States prior to May 14, 2001. In the first several of those paragraphs, for example, the Immigration Judge focuses on her concerns about Shul's effort to provide documentation for his contention.

The Immigration Judge begins with a paragraph that describes two letters Shul submitted from the East Boston Neighborhood Health Center.  One letter, dated June 18, 2003, states that Shul initially registered with the health center on May 31, 2002.  It lists no additional dates of service on which Shul was "subsequently . . . seen" by the health center.  But the other letter is, on its face, more helpful to Shul's effort to show he was in the United States earlier than May 14, 2001.  Dated June 23, 2011, this letter lists August 16, 2000 as when Shul initially registered with the health center.  In addition, it states Shul was "subsequently . . . seen" by the health center once in each 2001, 2002, 2003, 2004, 2005, and 2010.

The Immigration Judge concludes in the next paragraph, however, that Shul was "unable to adequately explain the inconsistencies" in the two letters.  Furthermore, she notes that the letters do not accord with other parts of Shul's testimony.  Despite Shul testifying that he had appendix surgery in or around 2007, for example, the Immigration Judge observes that neither letter lists an entry near that date.  And while she notes that "it is possible [Shul] was seen elsewhere," she states that "if his treatment was at the [health center] it should have appeared on this form."

In the very next paragraph of the opinion, the Immigration Judge expresses the further concern that "[n]o

-7-

underlying medical records were presented to corroborate [Shul] having registered as the health center in August 2000 or having been seen in July 2001." And she adds that Shul "gave the impression" that he had informed the health center that "he needed information regarding earlier dates than had been placed in the first letter issued by the health center," although the Immigration Judge did acknowledge that "Shul was somewhat vague in his testimony on that point."

These inconsistencies, and other concerns, thus seem to be set forth in order to support the Immigration Judge's decision to discount the significance of the 2011 letter. And because that letter, if credited, would constitute reliable evidence that Shul was in the United States before May 14, 2001, the Immigration Judge appears to be pointing to this "conflicting evidence in the record" as a reason to doubt Shul's testimony that he actually arrived in the United States much earlier than May of that year.

The next to last paragraph of the Immigration Judge's analysis once again appears to focus on what the evidence shows about where Shul was during the period prior to May of 2001. This paragraph discusses the absence of corroborating evidence for Shul's testimony -- testimony about which, the Immigration Judge states, she has "serious doubts." In particular, the Immigration Judge points to the fact that Shul had failed to introduce evidence from either his mother (with whom he allegedly lived in 2001) or

brother (with whom he allegedly entered the country in 1999) to corroborate his claims. She also explains that Shul submitted no rent checks or other evidence to support his claim that he began paying rent in Boston in 2001. Finally, she notes that no medical or tax records were introduced that substantiated Shul's claim to having been in the United States in 2001.

The Immigration Judge concludes her discussion of Shul's application by stating that Shul had not met his burden to prove "that he was residing in the United States on February 13, 2001, and maintained continuous physical presence since March 9, 2001." In isolation, that sentence might be read to suggest that the Immigration Judge was actually making two independent findings -- first, that Shul was not residing in the United States as of February 13, 2001, and second, that even if he was, he failed to show that he "maintain[ed] continuous physical presence" in the country from March 9, 2001 on. But in the context of the Immigration Judge's analysis as a whole, we do not believe that is a fair reading. We instead conclude that the sentence must be read to have a more limited scope.

The sentence sets forth a conclusion that necessarily follows from the one factual finding that the Immigration Judge did clearly make -- namely, that Shul offered no reliable evidence to show that he was even in the United States prior to May 14, 2001. After all, May 14 comes after both February 13 and March 9. Thus,

if the Immigration Judge is right that no reliable evidence shows Shul to have been in the United States before May 14, then Shul necessarily failed to show both that he was resident in the United States as of February 13, 2001 and that he maintained a continuous physical presence from March 9 on.

The Board's decision affirming the Immigration Judge lends additional support to our reading. Its three-paragraph opinion begins by stating the basic facts of the case. The introductory paragraph also states that the Immigration Judge "determined that the respondent did not satisfy his burden of proof that he was residing in the United States on February 13, 2001, and maintained continuous physical presence since March 9, 2001." But in the next and only paragraph of the opinion that addresses the merits of the Immigration Judge's analysis, the Board focuses solely on the finding that Shul was "unable to establish having resided in the United States as of February 13, 2001." The Board thus makes no separate assessment of whether, if Shul had established that fact, his evidence would have been enough to show the kind of continuous ties the law requires of those seeking temporary protected status.

B.

Having determined that the only finding before us concerns Shul's proof about whether he was in the country before May 14, 2001, we now examine whether the Board erred in making it.

-10-

In doing so, we are mindful that we owe deference to an agency's factual determinations.  See Waweru, 437 F.3d at 203.  But we are also mindful that, in reviewing for "substantial evidence," we still must consider the "whole record."  Gailius v. I.N.S., 147 F.3d 34, 44 (1st Cir. 1998).  We do not look, therefore, only to the evidence that supports the agency's conclusion and then determine whether it, standing alone, is "substantial."  Instead, we consider that evidence alongside evidence that may point towards a contrary conclusion and then determine whether, considered as whole, the record supports the agency's finding.  See Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004).

In light of these principles, we cannot say that the finding below is supported by substantial evidence.  In addition to the June 2003 and June 2011 letters discussed above, Shul submitted another letter from the East Boston Neighborhood Health Center.  Dated September 19, 2000, this letter states that it is accompanied by Shul's health plan card, and the letter directs Shul to call the health center should he have any questions or concerns.[3]  This letter thus plainly seems to indicate not only that Shul was in Boston as of September 2000, but also that he was sufficiently established there to have sought out and received a formal

---

[3] The original version of the September 19, 2000 letter is in Spanish.  Pursuant to immigration court rules of procedure, Shul submitted to the immigration court a notarized English translation in addition to the original.  See 8 C.F.R. § 1003.33.

-11-

connection to this health care provider. But neither the Immigration Judge nor the Board mentioned, let alone discussed, this letter. And they failed to do so even though it plainly appears to contradict the only finding made below: that Shul was not in the United States before May 2001.

Perhaps both the Immigration Judge and the Board consciously disregarded the September 2000 letter and did so for a sufficient reason. If so, they provided no explanation of their reasoning -- or even an indication that they considered the letter at all. We thus cannot conclude that the record as a whole supports the one finding on which the agency appears to have based its judgment.[4] See Gailius, 147 F.3d at 44 (agency must "'set forth'" basis for its decision "'with such clarity as to be understandable,'" and reviewing court "'must judge the propriety of

---

[4] The Immigration Judge's opinion could be read to imply that the health center's record-keeping is insufficiently reliable to provide a reason to trust the June 2011 letter. But even if we assume that is so, the 2000 letter is not a reconstruction of past events. Rather, it was sent to Shul contemporaneously with his receipt of a health card. Unlike the 2003 and 2011 letters, therefore, it reflects a real-time artifact of a tie to the health center that Shul had apparently just then established. In fact, if anything, the 2000 letter -- delivered to Shul before he had even initiated his application for temporary protected status -- would seem to corroborate the June 2011 letter's listing of August 2000 as the date of Shul's registration. That timing for his initial registration would seem to comport with the health center sending him a health plan card in early September. That said, whatever the fair import of the 2000 letter might be, including what it may suggest about the reliability of the 2011 letter, is not for us to say in the first instance. See Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 22 (1st Cir. 2004) (agency must decide factual issues "in the first instance").

-12-

[administrative] action solely by the grounds invoked by the agency'") (quoting Chenery, 332 U.S. at 196); cf. Turcios v. I.N.S., 821 F.2d 1396, 1399 (9th Cir. 1987) (immigration judges should "offer 'a specific, cogent reason for [their] disbelief'") (quoting Damaize-Job v. I.N.S., 787 F.2d 1332, 1338 (9th Cir. 1986)).

In reaching this conclusion, we accept that the Immigration Judge had "serious doubts" about the credibility of Shul's testimony. The Immigration Judge occupies "the best vantage point from which to assess the witnesses' testimonies and demeanors," and "we accord significant respect to these witness credibility determinations." Cuko v. Mukasey, 522 F.3d 32, 37 (1st Cir. 2008). But we do not see why the Immigration Judge's doubts about Shul's credibility -- "serious" though they were -- provide a sufficient basis for discounting the reliability of the information contained in a letter sent directly by the health center.

The 2000 letter, like the one sent in 2011, appears on health center letterhead, and the health center appears in the signature block. Neither the Board nor the Immigration Judge raise any doubts about its authenticity, nor does the record provide the basis for any. And while the Immigration Judge's opinion could be read to raise the concern that the 2011 letter was produced only upon Shul asking for some indication of earlier ties to the health

-13-

center than the 2003 letter from the health center showed, that same concern would not apply to the 2000 letter. That letter was, as we have noted, sent before Shul had even applied for temporary protected status. It thus appears to have been sent for reasons entirely unrelated to Shul's effort to prove residency. As a consequence, this case would seem to be one in which, contrary to the Immigration Judge's and the Board's finding, the petitioner's testimony "_did_ appear to be corroborated by specific documentary evidence." _Gailius_, 147 F.3d at 45.

III.

In short, both the Immigration Judge and the Board failed to explain adequately the only finding they expressly made in considering Shul's application for temporary protected status: that Shul failed to provide "reliable" information that he was even "in" the United States as of May 14, 2001. For that reason, we must vacate the Board's decision affirming the Immigration Judge's order and remand to the Board for further proceedings consistent with this opinion.

On remand, the Board may seek to explain why -- notwithstanding the September 2000 letter and the corroboration of it that the 2011 letter seems to provide -- Shul was not in the country soon enough to be eligible for temporary protected status. Alternatively, the Board may address the distinct issue of whether, even if Shul was in the country at that time, he failed to show the

-14-

kind of continuous ties thereafter that the law requires of those applying for temporary protected status. Such a determination would need to rest on a review of the evidence that bears on that distinct issue. That determination would also need to consider the evidence in light of the fact that "brief, casual, and innocent absences from the United States" do not disrupt continuity of presence or residence. 8 U.S.C. § 1254a(c)(4)(A), (B). But however the Board chooses to proceed, "[i]t is not the role of this court to determine in the first instance whether [Shul] met his burden" to prove eligibility for temporary protected status. Hernandez-Barrera v. Ashcroft, 373 F.3d 9, 22 (1st Cir. 2004). We instead must confine our review to the reasons the agency itself actually gave for its decision -- reasons which, we have explained, were not adequate in this instance. Accordingly, the decision of the Board is vacated and remanded.