# United States Court of Appeals
## For the First Circuit

Nos. 14-1217
     14-1787

FREDY VILLANUEVA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITIONS FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Kayatta and Barron, Circuit Judges.

Eduardo Masferrer and Masferrer & Associates, P.C. on brief for petitioner.
Joyce R. Branda, Acting Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Corey L. Farrell, Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

April 24, 2015

**LYNCH, Chief Judge**.  This is a petition for review of a Board of Immigration Appeals (BIA) determination that petitioner Fredy Villanueva is ineligible for consideration for discretionary relief from removal under a special program.  The BIA's result depends on an analytical error, and petitioner is eligible for consideration.  We remand so that petitioner may be considered for discretionary relief.

In June 2009, Villanueva, a native of El Salvador living in the United States, was charged with removability for being a non-citizen present in the United States without being admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A)(i).  Villanueva sought relief from removal by requesting review of an earlier denial of his application for Temporary Protected Status (TPS) under 8 U.S.C. § 1254a.  The TPS statute affords undocumented immigrants protection from removal from the United States upon a determination by the Attorney General that conditions in the individual's home country prevent his or her safe return.  Shul-Navarro v. Holder, 762 F.3d 146, 147 (1st Cir. 2014).  The Attorney General designated El Salvador for TPS in 2001 because of a disruption of living conditions in El Salvador resulting from a series of earthquakes that occurred that year.  See Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (Mar. 9, 2001); see also Shul-Navarro, 762 F.3d at 147.

A non-citizen is ineligible for TPS if he or she has been convicted of an "aggravated felony." See 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); id. § 1254a(c)(2)(B)(ii). After an October 2011 hearing, the Immigration Judge (IJ) denied Villanueva's application for TPS on the ground that he had a 2006 conviction for third-degree assault under Connecticut law, which the IJ determined was a "crime of violence" under 18 U.S.C. § 16, and therefore an "aggravated felony." See 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" to include "a crime of violence (as defined in [18 U.S.C. § 16], but not including a purely political offense) for which the term of imprisonment [is] at least one year"). The BIA affirmed the IJ's ruling and later denied Villanueva's motion for reconsideration.[1]

Villanueva now petitions for review of the BIA's decisions, arguing that the agency erred in its determination that

---

[1]    The first BIA decision endorsed the IJ's reasoning on the "crime of violence" issue in two pages of analysis, but ended its opinion with the following non-sequitur: "As the respondent has failed to show that he has not been convicted of a felony or two misdemeanors committed in the United States, he has not shown eligibility for TPS." Villanueva argues, and the government does not dispute, that third-degree assault under Connecticut law is not a "felony" for purposes of the TPS statute (which is defined differently from an "aggravated felony" for purposes of 8 U.S.C. § 1101(a)(43)(F)) because it does not carry a possible punishment of more than one year imprisonment. See 8 C.F.R. § 1244.1. The BIA's order on reconsideration makes clear that the ground for its denial of Villanueva's TPS application was its holding that Villanueva had been convicted of an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43)(F), not a holding that Villanueva's prior conviction was a "felony" under the TPS statute.

his conviction for third-degree assault under Connecticut law constituted a "crime of violence."  Applying de novo review to the BIA's analytical method, see United States v. Fish, 758 F.3d 1, 4 (1st Cir. 2014), "including its determination that a non-citizen's criminal conviction is grounds for removal," Patel v. Holder, 707 F.3d 77, 79 (1st Cir. 2013), we agree with Villanueva. Accordingly, we vacate the BIA's decision and remand this case to the agency for further proceedings.

The statute of conviction, Conn. Gen. Stat. § 53a-61, provides as follows:

> A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

Id. § 53a-61(a).  Third-degree assault is a misdemeanor under Connecticut law.  Id. § 53a-61(b).  However, it carries a maximum one-year term of imprisonment, see id., meaning that it would constitute an "aggravated felony" within the meaning of the TPS if it qualifies as a "crime of violence" under 18 U.S.C. § 16.  See 8 U.S.C. § 1101(a)(43)(F).[2]

---

[2]    The conviction is not a "felony" within the meaning of the TPS statute because that definition requires the crime to be punishable by a term of imprisonment strictly greater than one year.  See 8 C.F.R. § 1244.1; see also supra note 1.

Section 16 defines the term "crime of violence" as follows:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The parties agree that, because third-degree assault is a misdemeanor under Connecticut law, only subsection (a) of § 16 is at issue.

In determining whether a past conviction fits within the definition of a "crime of violence," we generally apply the "categorical approach," under which we examine the elements of the predicate crime and determine whether those elements are categorically the same as, or narrower than, the "generic offense" described by the federal statute. See Descamps v. United States, 133 S. Ct. 2276, 2281 (2013); see also Fish, 758 F.3d at 5-6.

However, if a statute is "divisible," -- that is, "if it sets forth one or more elements of a particular offense in the alternative" -- we may apply the "modified categorical approach." Fish, 758 F.3d at 6. Under the modified categorical approach, we may examine certain documents in the record of conviction, such as the indictment, plea agreement, and plea colloquy, in order to determine under which prong of the divisible statute the defendant

-5-

was actually convicted, and then ask whether that particular crime categorically falls within the generic offense.  See United States v. Carter, 752 F.3d 8, 19 (1st Cir. 2014); Patel, 707 F.3d at 80-81; see also Descamps, 133 S. Ct. at 2281; Shepard v. United States, 544 U.S. 13, 26 (2005).

If those documents are inconclusive, then we must discard the modified categorical approach and determine whether all of the alternative means of committing the predicate crime fit within the federal definition of the generic offense.  See Fish, 758 F.3d at 15 (noting that, if there is "no indication" in the record "as to whether the charge was under a particular subdivision" of a criminal statute, the court must determine whether the "minimum criminal conduct" encompassed by the statute qualifies as a crime of violence (citations and internal quotation marks omitted)).

The BIA and the government agree that the Connecticut assault statute does not categorically fit within the definition of a "crime of violence" because it criminalizes reckless conduct in subsection (2) and negligent conduct in subsection (3).  See Leocal v. Ashcroft, 543 U.S. 1, 9-10 (2004) (explaining that "[t]he key phrase in § 16(a) -- the 'use . . . of physical force against the person or property of another' -- most naturally suggests a higher degree of intent than negligent or merely accidental conduct" (alteration in original)); Fish, 758 F.3d at 9-10 & n.4 (holding that "section 16(b) does not reach reckless conduct" and

collecting cases from other circuits holding that reckless conduct cannot constitute a crime of violence under § 16). The BIA, using the modified categorical approach, adopted the IJ's finding that Villanueva was convicted under subsection (1) of the Connecticut statute, which requires intent to cause physical injury and actual causation of that injury. The BIA then held that this subsection constitutes a "crime of violence" under § 16(a). The government's brief echoes this line of argument.

We disagree with the first proposition and do not reach the second. The modified categorical approach cannot resolve this case because it is not established from the record of conviction under which prong of the statute Villanueva was convicted. Accordingly, given that the entirety of the Connecticut statute does not qualify as a "crime of violence," we cannot conclude that Villanueva was convicted of a crime of violence. We do not reach the analytically later question of whether a conviction under the first prong of the Connecticut statute would qualify as a crime of violence.[3]

The BIA's conclusion that Villanueva was convicted under subsection (1) of the statute was based on a statement by what it

---

[3] In Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003), the Second Circuit answered this question in the negative. Id. at 193-97. The BIA has reached a contrary conclusion. See In re Martin, 23 I. & N. Dec. 491, 498-99 (B.I.A. 2002). The government also suggests that there is tension between our decision in United States v. Nason, 269 F.3d 10 (1st Cir. 2001), and Chrzanoski.

says was the "respondent's attorney" at the plea colloquy that "apparently [the respondent] got into an altercation with [the victim] and he said the [respondent] kicked him in the head causing a large bump." But an examination of the plea colloquy in its entirety reveals that the BIA misread the colloquy. At the beginning of the plea hearing, the court asked for the "[f]actual basis for the assault," and the prosecutor (not Villanueva's attorney) responded:

> It was January 11, 2006 in the town of South Windsor, Your Honor, at Nutmeg Recycling. Apparently he . . . got into an altercation with a Samuel [INDECIPHERABLE] and he said that the defendant kicked him in the head causing a large bump. It was like an argument on the loading docks there.

Villanueva's attorney then initially asked if his client could enter an Alford plea to the assault charge, and asked the court to explain the consequences of an Alford plea to his client. The following colloquy ensued:

> THE COURT: All right. Fredy, the State just indicated on the record what are things happened [*sic*] that constitute the assault in the third degree. Under the Alford plea you disagree with some of those facts, but after talking to [your attorney] you come to the conclusion that if you go to trial you could be found guilty beyond a reasonable doubt. So basically you're asking the Court to accept your plea without admitting all the facts so you could dispose of this matter by the offer that's been made on the record. Is that what you want to do?
>
> MR. VILLANUEVA: Well [SPANISH]

THE COURT:  Sí or no?

MR. VILLANUEVA:  Um . . .  Um . . .  It's not clear for me now 'cause I don't understand what she's talking.

THE COURT:  Pass it to go out and talk to [your attorney].

After a break in which the court conducted other business, Villanueva and his attorney returned to continue the plea hearing.  Villanueva's attorney asked the court "if we could vacate the prior pleas and elections including the ones that were just entered under the Alford plea because what I'd like to do is submit a nolo plea, Your Honor.  So I've explained that to him."  The court agreed and then addressed Villanueva: "All right.  And you understand you have a criminal conviction for assault in the third degree.  By submitting a nolo plea the Court will make a finding of guilty."  Villanueva responded affirmatively.

"[T]he facts revealed by the plea colloquy are not sufficient to identify which crime . . . is the crime of conviction."  Patel, 707 F.3d at 83 (citations and internal quotation marks omitted).  The record does not establish that Villanueva agreed to the prosecutor's version of events.  He pled nolo contendere only to an undifferentiated generic reference to the statute.  His attorney was originally going to have Villanueva enter an Alford plea (under which Villanueva would admit guilt but not the underlying facts), but then, after a break necessitated by Villanueva's inability to understand the proceedings and the nature

-9-

of the charges against him, the attorney asked the court to "vacate the prior pleas and elections" and to allow Villanueva to enter a plea of nolo contendere to third-degree assault. The court obliged, and there was no further discussion of the facts underlying the plea. In short, the plea colloquy does not establish that Villanueva admitted to an intentional assault under subsection (1) of the Connecticut statute, and so the BIA erred in concluding that he was convicted under that subsection. Cf. id. at 82-83.

Because the parties agree that third-degree assault, as defined by Connecticut law, is not categorically a crime of violence, see Leocal, 543 U.S. at 9; Fish, 758 F.3d at 9-10 & n.4, we hold that Villanueva's conviction does not render him ineligible for TPS. Accordingly, we vacate the BIA's decision and remand this case to the agency so it may determine whether Villanueva warrants TPS relief as a matter of discretion. See 8 C.F.R. § 1244.2.