[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13223
_____

Agency No. A045-874-205


JOSE EMILIO ULLOA FRANCISCO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____


(March 12, 2018)

Before TJOFLAT and WILSON, Circuit Judges, and ROBRENO,[*] District Judge.

TJOFLAT, Circuit Judge:

The Armed Career Criminal Act ("ACCA") provides that a person convicted of violating 18 U.S.C. § 922(g) faces an enhanced sentence if he or she has three previous convictions for "violent felon[ies]."[1] To determine whether a conviction qualifies as a violent felony, a court may look "only to the statutory definition[] of the prior offense[], and not to the particular facts underlying th[e] conviction[]." *Taylor v. United States*, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159 (1990). In some cases, the statute under which the defendant was convicted contains multiple offenses—some that are violent felonies and some that are not. This means that the statute is divisible. *Descamps v. United States*, 570 U.S. 254, 257, 133 S. Ct. 2276, 2281 (2013). In such cases, the Government must prove that the conviction qualified as a violent felony. To do so, it may introduce limited parts of the record of the conviction.[2] *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005) (plurality opinion). If these parts, which we refer to as *Shepard*

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1] 18 U.S.C. § 924(e)(1). The ACCA also provides for an enhancement if a person has committed three or more "serious drug offense[s]." *Id.* § 924(e)(1). The statute defines both "violent felony" and "serious drug offense." *Id.* § 924(e)(2)(A)–(B).

[2] The Government is limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26, 125 S. Ct. at 1263. Ordinarily, these items are not in dispute and thus are subject to judicial notice.

2

documents, do not identify the offense of conviction, the Government has failed to carry its burden of proof, and it is presumed that the conviction was for an offense that did not qualify as a violent felony.[3] *Johnson v. United States*, 559 U.S. 133, 137, 130 S. Ct. 1265, 1269 (2010).

This same presumption applies in proceedings brought by the Attorney General ("AG") under the Immigration and Nationality Act ("INA") to remove an alien from the United States on the ground that the alien, after admission into the country, had been convicted of an offense designated in the INA. *See* INA § 237(a)(2); 8 U.S.C. § 1227(a)(2). If the alien was convicted under a divisible statute, one which contains both designated offenses and non-designated offenses, the AG may prove that the alien's conviction qualified as one of the designated offenses by introducing *Shepard* documents.[4] *Moncrieffe v. Holder*, 569 U.S. 184,

---

[3] This is so even though the defendant as a matter of fact was convicted of a crime that did qualify as a violent felony.

[4] The INA expressly permits the Government to use an enumerated set of documents:

> [A]ny of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:
>
> (i) An official record of judgment and conviction.
>
> (ii) An official record of plea, verdict, and sentence.
>
> (iii) A docket entry from court records that indicates the existence of the conviction.
>
> (iv) Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

191–92, 133 S. Ct. 1678, 1684–85 (2013).  If the AG fails to do so, it is presumed that the alien was convicted of a non-designated offense.  *Id.*  This is referred to as the *Moncrieffe* presumption.  *See, e.g.*, *Sauceda v. Lynch*, 819 F.3d 526, 531–32 (1st Cir. 2016).

In the case before us, the AG proved that the alien, a lawful permanent resident, was removable for having been convicted of a felony related to drug trafficking.  INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i).  After his removal was ordered, the alien petitioned the AG to cancel the removal.  To be eligible for such discretionary relief, the alien had to prove that he had not previously been convicted of an "aggravated felony," as the INA defines that term.  INA § 240A(a)(3); 8 U.S.C. § 1229b(a)(3).

---

> (v) An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.
>
> (vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.
>
> (vii) Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

INA § 240(c)(3)(B); 8 U.S.C. § 1229a(c)(3)(B).  *Shepard* evidence encompasses all of these items since they are judicially noticeable.  *See supra* note 2.

The state statute under which the alien had been convicted created the felony of "trafficking in cocaine," which was defined to include the selling, purchasing, manufacturing, delivering, or possessing of cocaine, or the bringing of cocaine into Florida. Fla. Stat. § 893.135(1)(b)1.c. The alien admitted that these alternative conduct elements created separate crimes, some of which fell under the definition of an aggravated felony and some which did not. He argued that because the AG had not shown that he had been convicted of one of the crimes constituting an aggravated felony, the *Moncrieffe* presumption applied and required the immigration court to find that he had been convicted of an offense that was not an aggravated felony.

The Board of Immigration Appeals ("BIA") agreed that the state statute created separate crimes, some of which were aggravated felonies and some of which were not. It then rejected the alien's argument—holding that he had the burden to prove that his conviction was not for an aggravated felony—and denied his application for cancellation of removal. The alien now petitions us to review the BIA's decision. A recent decision of this Court binds us to hold that the alien did not commit an aggravated felony because the state statute under which he was convicted is neither divisible nor has a categorical match in the Controlled Substance Act ("CSA"). *See Cintron v. U.S. Attorney Gen.*, No. 15-12344, 2018

5

WL 947533, at *6 (11th Cir. Feb. 20, 2018). We therefore grant the alien's petition, vacate the BIA's decision, and remand the case for further proceedings.

## I.

The INA authorizes the AG to remove from the United States any alien who, at any time after admission, was convicted of certain felonies, including the violation of a law "relating to a controlled substance" and the commission of an "aggravated felony." INA § 237(a)(2)(A)(iii), (a)(2)(B)(i); 8 U.S.C. § 1227(a)(2)(A)(iii), (a)(2)(B)(i). To obtain the alien's removal, the AG must prove a conviction of one of these felonies by clear and convincing evidence. INA § 240(c)(3)(A); 8 U.S.C. § 1229a(c)(3)(A).[5]

If an immigration court issues an order of removal, a permanent resident may petition the AG to cancel the removal. INA § 240A(a); 8 U.S.C. § 1229b(a). The AG may exercise his discretion to grant such relief if the alien satisfies three requirements, one being that the alien "has not been convicted of any aggravated felony."[6] INA § 240A(a)(3); 8 U.S.C. § 1229b(a)(3). The alien has the burden

---

[5] The INA states:

> In the proceeding the [Government] has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

INA § 240(c)(3)(A); 8 U.S.C. § 1229a(c)(3)(A).

[6] The INA states:

6

both to establish these "eligibility requirements" and to show that he or she "merits a favorable exercise of discretion,"[7] INA § 240(c)(4)(A), 8 U.S.C. § 1229a(c)(4)(A), by a "preponderance of the evidence," 8 C.F.R. § 1240.8(d).[8]

The INA defines the term "aggravated felony" in a seemingly interminable list of offenses. *See* INA § 101(a)(43); 8 U.S.C. § 1101(a)(43). The list includes "illicit trafficking in a controlled substance" and "drug trafficking crime[s]" as

---

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
>
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

INA § 240A(a)(1)–(3); 8 U.S.C. § 1229b(a)(1)–(3).

[7] The INA states:

> An alien applying for relief or protection from removal has the burden of proof to establish that the alien—
>
> (i) satisfies the applicable eligibility requirements; and
>
> (ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

INA § 240(c)(4)(A); 8 U.S.C. § 1229a(c)(4)(A).

[8] The regulation states:

> Relief from removal. The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion. If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

8 C.F.R. § 1240.8(d).

defined under federal law.[9] INA § 101(a)(43)(B); 8 U.S.C. § 1101(a)(43)(B). A

state crime constitutes an aggravated felony for illicit trafficking in a controlled

substance only if the conduct it proscribes is punishable as a felony under federal

law. *Lopez v. Gonzales*, 549 U.S. 47, 60, 127 S. Ct. 625, 633 (2006).

The Supreme Court has constructed a framework—with roots in both

immigration and criminal law—to determine when a state crime constitutes an

aggravated felony. *See Mellouli v. Lynch*, 575 U.S. —, 135 S. Ct. 1980, 1986–87

(2015). The framework was designed for cases in which the Government seeks the

removal of an alien under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii)

for having been convicted of an "aggravated felony," and the immigration court

---

[9] The INA defines the term "aggravated felony" as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." INA 101(a)(43)(B); 8 U.S.C. § 1101(a)(43)(B).

The BIA has defined "illicit trafficking in a controlled substance." *See Matter of Davis*, 20 I. & N. Dec. 536, 540–41 (BIA 1992). The term "illicit" means "not permitted or allowed; prohibited; unlawful; as an illicit trade." *Id.* at 541 (quotation omitted). It thus "simply refers to the illegality of the trafficking activity." *Id.*

The BIA takes "[t]rafficking" to mean "[t]rading or dealing in certain goods." *Id.* (quotation omitted). It has stated that trafficking is a term "commonly used in connection with illegal narcotic sales." *Id.* (quotation omitted). "Essential to the term in this sense is its business or merchant nature, . . . although only a minimum degree of involvement may be sufficient under the precedents of this Board to characterize an activity as 'trafficking' or a participant as a 'trafficker.'" *Id.*

The BIA therefore defined "illicit trafficking in a controlled substance" to be "unlawful trading or dealing of any controlled substance as defined in section 102 of the Controlled Substances Act." *Id.* It further noted that illicit trafficking in a controlled substance includes any "drug trafficking crime" as defined in 18 U.S.C. § 924(c)(2). *Matter of Davis*, 20 I. & N. Dec. at 542. "A 'drug trafficking crime' . . . is 'any felony punishable under' the [CSA]." *Id.*

8

has to decide whether the alien's state conviction qualified as one.[10] The framework presents two approaches: the categorical approach, which poses a question of law,[11] and the modified categorical approach, which poses a mixed question of law and fact.[12] We discuss each approach in turn.

## A.

The categorical approach is used to decide whether the alien's state conviction is of an offense "comparable to an offense listed in the INA." *Moncrieffe*, 569 U.S. at 190, 133 S. Ct. at 1684. Under this approach, "the facts" underlying the conviction are ignored. *Id.* The immigration court looks "instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Id.* (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 186, 127 S. Ct. 815, 818 (2007)). The question is whether "the state statute shares the nature of the federal

---

[10] The framework also applies to cases in which the Government seeks the removal of an alien under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien convicted for violating a state law "relating to a controlled substance."

[11] The question is whether "the state offense is comparable to an offense listed in the INA." *Moncrieffe*, 569 U.S. at 190, 133 S. Ct. at 1684; *see Mellouli*, 575 U.S. at —, 135 S. Ct. at 1987 (noting that the categorical approach focuses on a "legal question of what a conviction *necessarily* established" (emphasis in original)).

[12] Where the alien's conviction does not indicate which of the offenses the alien committed—an offense that has an aggravated felony analogue or one that does not—the immigration court's decision turns on the probative value of the Government's *Shepard* evidence. It thus requires findings of fact. The goal of this fact finding is to determine whether the alien was convicted of an offense that has a federal analogue.

offense that serves as a point of comparison." *Moncrieffe*, 569 U.S. at 190, 133 S. Ct. at 1684. This involves a comparison of the elements of the state offense and the federal offense to see if they match. *See Mathis v. United States*, 579 U.S. —, 136 S. Ct. 2243, 2248 (2016). After determining that the offenses categorically match, the court must "presume that the conviction 'rested upon nothing more than the least of the acts' criminalized." *Moncrieffe*, 569 U.S. at 190–91, 133 S. Ct. at 1684 (alterations omitted) (quoting *Johnson*, 559 U.S. at 137, 130 S. Ct. at 1269).

The Supreme Court developed the categorical approach to promote efficiency in removal proceedings by prohibiting the relitigation of "past convictions in minitrials conducted long after the fact." *Moncrieffe*, 569 U.S. at 200–01, 133 S. Ct. at 1690. The approach eliminates the necessity of a factual inquiry that would unduly burden the administration of immigration law, especially given that the alien's conviction may have occurred years prior to the removal proceeding. *Mellouli*, 575 U.S. at —, 135 S. Ct. at 1986–87. The categorical approach also "enables aliens to anticipate the immigration consequences of guilty pleas in criminal court." *Id.* at 1987 (quotation omitted).

B.

The Supreme Court has modified the categorical approach where the criminal statute is "a so-called 'divisible statute.'" *Descamps*, 570 U.S. at 257, 133 S. Ct. at 2281. A divisible statute is one that "sets out one or more elements of the

10

offense in the alternative." *Id.*; *see Donawa v. U.S. Attorney Gen.*, 735 F.3d 1275, 1281 (11th Cir. 2013) (stating that a statute is divisible when it "lists a number of alternative elements that effectively create several different crimes"). In *Mathis v. United States*, the Supreme Court made clear that the modified categorical approach applies only to statutes that list alternative elements and so create multiple crimes, not to statutes that list alternative means through which to satisfy a single element.[13] 136 S. Ct. at 2247–48.

Thus, if a statutory offense merely lists alternative means to commit an element of a single crime, a court must perform the categorical analysis and "ask only whether the *elements* of the state crime and generic offense make the requisite match."[14] *Id.* at 2256 (emphasis in original). To determine whether a statute contains alternative elements or means, a court may look at the statutory text and "authoritative sources of state law." *Id.* However, "if state law fails to provide clear answers, federal judges have another place to look: the record of a prior

---

[13] The Court defined elements as "constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis*, 579 U.S. —, 136 S. Ct. at 2248 (quotation omitted). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant . . . and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id.*

[14] The reason for this rule is that when a list "merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item." *Id.* at 2249. As a result, "[s]tatements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary." *Id.* at 2253 (quoting *Descamps*, 570 U.S. at 270, 133 S. Ct. 2289). The Court thus sought to "avoid unfairness to defendants" by limiting the modified categorical approach to statutes that contain multiple crimes, not alternative means to satisfy an element. *Id.*

11

conviction itself." *Id.* Where an indictment reiterates "all the terms of" a statute with alternatives, it "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257.

If a statute is determined to be divisible after this analysis, the Government may present "a limited class of documents" to establish the offense the alien committed and therefore the ground for removal. *Spaho v. U.S. Attorney Gen.*, 837 F.3d 1172, 1177 (11th Cir. 2016) (quoting *Descamps*, 570 U.S. at 257, 133 S. Ct. at 2281). Specifically, the Government may introduce the "trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson*, 559 U.S. at 144, 130 S. Ct. at 1273.

After the Government has presented these items and established the crime the alien committed, the court must "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime."[15] *Descamps*, 570 U.S. at 257, 133 S. Ct. at 2281. Therefore, the modified categorical approach allows the

---

[15] If the elements match, it is "presume[d] that the conviction 'rested upon nothing more than the least of the acts' criminalized." *Moncrieffe*, 569 U.S. at 190–91, 133 S. Ct. at 1684 (alterations omitted) (quoting *Johnson*, 559 U.S. at 137, 130 S. Ct. at 1269).

court to consider a limited set of documents to identify the crime of conviction and thus "implement the categorical approach." *Id.* at 263, 133 S. Ct. at 2285.

## II.

Jose Emilio Ulloa Francisco is a native and citizen of the Dominican Republic. He was admitted into the United States as a permanent resident on October 5, 1997.

On January 13, 2010, Francisco was arrested by the North Miami Beach Police Department in a sting operation after he gave an undercover police officer $30,000 as partial payment for ten kilograms of cocaine at a price of $21,000 per kilogram.[16] Four weeks later, on February 3, the Assistant State Attorney of Miami-Dade County filed a two-count Information in the Miami-Dade County Circuit Court charging Francisco with drug trafficking. Count 1 alleged that Francisco violated Fla. Stat. § 893.135(1)(b)1.c, which makes it unlawful to sell,

---

[16] The affidavit the arresting officer filed in support of a Complaint issued on the same day described the circumstances of Francisco's arrest.

> [On January 13, 2010, at 3:10 PM], the defendant Jose Ulloa [Francisco] and an unknown co-defendant met with an undercover agent of the [North Miami Beach Police Department] to negotiate a cocaine deal. Ulloa & the co-defendant negotiated to purchase ten kilograms of cocaine for $21,000 per kilogram. At approximately 1510 hours, Ulloa arrived at the Pep Boys Parking lot, [295 N.E. 167th St. in North Miami Beach,] and showed the agent a large amount of U.S. currency. Ulloa responded to the NMBPD undercover location and gave the agent $30,000 in U.S. currency as a down payment for cocaine. Ulloa was placed under arrest for trafficking in cocaine. The total weight of kilogram including packaging was approximately 1027.4 grams. Ulloa was transported to NMBPD/DCJ for processing.

13

purchase, manufacture, deliver, or bring cocaine into Florida or to knowingly

possess cocaine. Count 2 alleged that Francisco violated Fla. Stat. §§ 777.04(3)

and 893.135(5) by conspiring to commit the Count 1 offense.[17] On September 10,

---

[17] The two counts read as follows:

Count 1

JOSE E. FRANCISCO ULLOA, on or about January 13, 2010, in the County and State aforesaid, did unlawfully sell, purchase, manufacture, deliver, or bring into this state, or was knowingly in actual or constructive possession of cocaine, as described in s. 893.03(2)(a)4, Florida Statutes, or any mixture containing cocaine, in the amount of four-hundred (400) grams or more, but less than one-hundred and fifty (150) kilograms of cocaine, or any mixture containing cocaine, in violation of s. 893.135(1)(b)1.c, Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

Count 2

And the aforesaid Assistant State Attorney, under oath, further information makes JOSE E. FRANCISCO ULLOA, on or about January 13, 2010, in the County and State aforesaid, did unlawfully and feloniously agree, conspire, combine or confederate with another person or persons, to wit: VICTOR, to commit a felony under the laws of the State of Florida, to wit: unlawful Trafficking in Cocaine, or any mixture containing cocaine, as described in s. 893.135(5) and s. 777.04(3) and s. 777.011, Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

Fla. Stat. § 893.135(1)(b)1.c states, in pertinent part:

Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, . . . but less than 150 kilograms of cocaine . . . commits a felony of the first degree, which felony shall be known as "trafficking in cocaine" . . . . If the quantity involved . . . [i]s 400 grams or more, but less than 150 kilograms, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and pay a fine of $250,000.

14

2012, Francisco pled guilty to both counts pursuant to a plea agreement. The

Circuit Court sentenced him to concurrent prison terms of three years to be

followed by a three-year term of probation and imposed a fine of $250,000.[18]

On September 13, 2012, the Government served Francisco with a Notice to

Appear ("NTA"). Based on his conviction on Count 1 of the Information, the

NTA alleged that Francisco was removable under INA § 237(a)(2)(A)(iii), 8

U.S.C. § 1227(a)(2)(A)(iii),[19] as an alien convicted of an "aggravated felony," a

term defined to encompass "illicit trafficking in a controlled substance" and "drug

trafficking crime[s]," INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).[20]

---

It is a first degree felony under Fla. Stat. § 893.135(5) to "conspire[] . . . to commit any act prohibited" by Fla. Stat. § 893.135(1). Under Fla. Stat. § 777.04(3), "[a] person who agrees, conspires, combines, or confederates with another person or persons to commit any offense commits the offense of criminal conspiracy." Further, Fla. Stat. § 777.011 states:

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

[18] As indicated in note 17, *supra*, Francisco faced on each of Counts 1 and 2 a mandatory minimum prison sentence of fifteen years, and a maximum sentence of sixty years. Florida's Sentencing Guidelines called for a minimum sentence of eleven years. The State waived the fifteen-year mandatory minimum, however, so the Guideline minimum of eleven years took effect. The Court then departed downward from that minimum and imposed a prison term of three years. We assume the Court imposed that sentence because the plea agreement recommended it.

[19] The INA states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." INA § 237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii).

[20] *See supra* note 9.

A hearing on the removal charge was scheduled to come before an immigration judge ("IJ") on February 27, 2013. The hearing, however, was rescheduled for April 24, 2013. During the hearing in April, Francisco's attorney challenged the NTA charge, contending that Francisco's Count 1 conviction did not meet the INA definition of an aggravated felony. The IJ ordered the parties to brief the issue and scheduled a hearing to resolve it for August 28, 2013.

In the August hearing, the IJ, after considering the parties' briefs and arguments, decided that the Count 1 conviction constituted a drug trafficking crime, and therefore an aggravated felony, because it was comparable to an offense in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). The IJ employed the categorical approach in reaching this decision.[21] Because the Count 1 conviction was an aggravated felony, the IJ announced that she would order Francisco's removal and deny his request for cancellation of removal. Faced with the IJ's decision, Francisco's attorney represented that Francisco would seek political asylum and withholding of removal under the United Nations Convention Against

---

[21] The IJ reasoned that "[Fla. Stat. § 893.135(1)(b)1.c] and certified criminal court documents" indicated that Francisco committed an aggravated drug trafficking offense within the aggravated felony definition. The IJ further noted that Francisco's conviction involved a "commercial" element within the meaning of *Lopez*, 549 U.S. at 53, 127 S. Ct. at 630, which supported the finding that Francisco committed the aggravated felony of illicit trafficking in a controlled substance.

Torture ("CAT").[22]  The IJ continued the removal proceeding to November 27, 2013, to enable counsel to make the case for CAT relief.

On November 27, the IJ rendered her decision from the bench in open court. The IJ reiterated the conclusion she had reached in August that the Count 1 conviction was a drug trafficking crime and therefore an aggravated felony.  She held that Francisco was ineligible for cancellation of removal for that reason.  The IJ also ruled that Francisco was "ineligible to seek political asylum or withholding of removal" under the CAT.

Francisco appealed the IJ's decision to the BIA on December 20, 2013.  He argued that his conviction could not amount to an aggravated felony because Fla. Stat. § 893.135(1)(b)1.c does not necessarily criminalize conduct that falls within the INA's definition of "aggravated felony."

The BIA vacated the IJ's decision on April 28, 2014.  It did so after concluding that Fla. Stat. § 893.135(1)(b)1.c is divisible—meaning that it contains offenses for which there were analogues in the INA definition of aggravated felony and offenses for which there were not.  The BIA therefore held that the IJ erred by employing the categorical approach in determining whether, in pleading guilty to Count 1, Francisco pled guilty to an aggravated felony.  It concluded that the IJ

---

[22] *See* 8 C.F.R. § 1208.16(c)(4) ("If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture.").

should have used the modified categorical approach instead. Since the IJ erred in this way, the BIA remanded the case with the instruction that the IJ employ the modified categorical approach in resolving the aggravated felony issue.

On June 20, 2014, the Government amended the NTA to assert an additional ground of removability against Francisco. The amendment alleged that Francisco was removable for violating a "law or regulation of a State . . . relating to a controlled substance," INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), [23] because of his conviction under Fla. Stat. § 893.135(1)(b)1.c. The Government also alleged that Francisco's conviction of conspiracy under Count 2 of the Information provided a separate ground of removal as either a conviction of an aggravated felony or a violation of a state law relating to a controlled substance.

The IJ responded to the BIA's remand on July 2, 2014. She ignored the BIA's instruction to apply the modified categorical approach in determining whether Francisco had been convicted of a crime with an analogue in the INA's definition of "aggravated felony." She instead applied the categorical approach once more. This time, however, the IJ concluded that Francisco's conviction under

---

[23] The INA states:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

INA § 237(a)(2)(B)(i); 8 U.S.C. § 1227(a)(2)(B)(i).

Fla. Stat. § 893.135(1)(b)1.c did not constitute an aggravated felony. She reasoned that *Donawa v. U.S. Attorney General*, 735 F.3d at 1283—where we held that Fla. Stat. § 893.13(1)(a)[24] is not divisible—bound her to apply the categorical approach to Fla. Stat. § 893.135(1)(b)1.c.

Applying that approach, the IJ observed that Fla. Stat. § 893.135(1)(b)1.c does not require proof that the defendant knew of the illicit nature of the controlled substance, whereas its federal analogue, 21 U.S.C. § 841(a)(1), requires it.[25] The IJ concluded that because Fla. Stat. § 893.135(1)(b)1.c does not require the same *mens rea* as the federal analogue, Francisco was not convicted of an aggravated felony. Having so concluded, the IJ ruled that the Government failed to make a case for Francisco's removability. After reaching these conclusions, the IJ stated that the removal proceeding was lodged in the wrong venue. The appropriate venue was the immigration court in Orlando, Florida, because Francisco was in

---

[24] This statute prohibits a person from "sell[ing], manufactur[ing], or deliver[ing], or possess[ing] with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a). It does not criminalize mere possession as does Fla. Stat. § 893.135(1)(b)1.c. *See Paccione v. State*, 698 So. 2d 252, 254 (Fla. 1997).

[25] Section 841(a) states:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
>
> (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a).

19

federal custody there. Though the appropriate venue lay elsewhere, the IJ rescinded the removal order and certified her decision to the BIA.

In arriving at her July 2, 2014 decision, the IJ did not consider the Government's June 20, 2014 amendment to the NTA, which alleged an alternative ground of removability—namely that Francisco was removable for violating a "law or regulation of a State . . . relating to a controlled substance." INA § 237(a)(2)(B)(i); 8 U.S.C. § 1227(a)(2)(B)(i).[26] The BIA, on September 10, 2014, therefore remanded the case to the immigration court in Orlando with the instruction that the court address the alternative ground of removability the Government alleged in its amended NTA.

On December 18, 2014, Francisco's attorney filed on Francisco's behalf an Application for Cancellation of Removal for Certain Permanent Residents. In the application, Francisco disclosed his convictions on Counts 1 and 2 of the Information, but stated that he "ha[d] not been convicted of an aggravated felony." On January 13, 2015, Francisco signed the application in Orlando, before the IJ and under oath prior to the commencement of the removal hearing scheduled for that day.

The purpose of the hearing on January 13 was to determine whether Francisco was removable on the NTA's alternative ground and, if so, whether his

---

[26] On July 14, 2014, the Government moved the BIA to change the venue to Orlando, Florida and to remand the case for consideration of its alternate ground for removal.

20

application for cancellation of removal should be granted. The IJ agreed with the Government that Francisco's conviction under Fla. Stat. § 893.135(1)(b)1.c related to a controlled substance and therefore found Francisco removable. The IJ next considered Francisco's application for cancellation of removal. To prevail, Francisco had to prove that he was eligible for that relief—in particular, that he had not been convicted of an aggravated felony. The focus was on his conviction under Fla. Stat. § 893.135(1)(b)1.c.

In an effort to prove that the conviction was not an aggravated felony, Francisco testified. The following is the gist of his testimony. Jeson Rosa, whom Francisco had known as a "friend" for seventeen years, introduced him to a "guy" and said, "I want you to do this for me." When Francisco asked what it was, Rosa said that he wanted Francisco to purchase a "packet" and "deliver" it to the man he had just met. Rosa gave Francisco $30,000, the amount needed for the purchase, and the man, whom Francisco soon discovered was an undercover police officer, drove him to "a warehouse." They went inside the warehouse office, where "[t]hey showed [him] a pack of cocaine." Francisco gave them the $30,000. He was immediately arrested.

The arresting officers asked him if he "wanted to [cooperate], work with them." Francisco felt "nervous" and "called Jeson Rosa for them but [Rosa] never

21

appeared."[27]  When the arresting officers asked Francisco if he knew what he was doing when he gave them $30,000 for the package, he responded: "You know, I ha[d] an idea what I was doing."  He was attempting to purchase a large amount of cocaine.

Nevertheless, the IJ applied the modified categorical approach and invoked the *Moncrieffe* presumption to conclude that Francisco had been convicted of mere possession of cocaine,[28] the least serious conduct criminalized by Fla. Stat. § 893.135(1)(b)1.c, which did not fall within the INA's definition of  aggravated felony.[29]  Francisco was thus eligible for cancellation of removal.[30]  At the close of the January 13, 2015 hearing, the IJ, in an exercise of discretion, cancelled Francisco's removal based on his "equities" and "representations to the court."[31]

The Government appealed the IJ's decision to the BIA.  In its brief, it asserted two grounds for reversal.  The first ground was that Francisco failed to

---

[27] The undercover officer was identified (but not by name) in the affidavit the arresting officer executed for the issuance of the Complaint.  *See supra* note 16.

[28] Without stating as much, the IJ saddled the Government with the burden of proof on the issue of cancellation of removal.

[29] Mere possession of cocaine is not an aggravated felony.  *See Lopez*, 549 U.S. at 60, 127 S. Ct. at 633.

[30] In finding Francisco eligible for cancellation of removal, the IJ did not directly address on the record or in his oral decision whether Francisco established the first two requirements for relief, which relate to his residence.  *See supra* note 6.  However, in the hearing on January 13, Francisco testified that he received a "green card" in "October, 1997" and has lived in the United States "[s]ince that time." In the oral decision, the IJ found that Francisco "is a lawful permanent resident who has been admitted back since October 5, 1997."

[31] The IJ did not elaborate on these "equities" and "representations."

22

prove his eligibility for cancellation of removal by establishing that his conviction under Fla. Stat. § 893.135(1)(b)1.c did not constitute the aggravated felony of trafficking in an illicit controlled substance. The Government pointed out that the statute criminalized more than mere possession of cocaine and was therefore divisible. It created disjunctive sets of offenses, at least one of which satisfied the definition of aggravated felony for either "illicit trafficking" in a controlled substance or "drug trafficking crime[s]." INA § 101(a)(43)(B); 8 U.S.C. § 1101(a)(43)(B). The Government went on to observe that the term "illicit trafficking" included "any state . . . felony conviction involving the unlawful trading or dealing of any controlled substance." Since two of the offenses in Fla. Stat. § 893.135(1)(b)1.c involved trading and dealing in cocaine, commercial transactions of a controlled substance, the Government argued that the IJ erred in failing to require Francisco to prove that his Count 1 conviction was not for engaging in such conduct.

The Government's second ground for reversal was that the IJ abused his discretion in finding that Francisco merited relief given the seriousness of the conduct for which he had been convicted.

In his brief, Francisco conceded that he was removable for having been convicted for violating a law relating to a controlled substance offense. He also conceded that Fla. Stat. § 893.135(1)(b)1.c is a divisible statute which

23

"criminalizes conduct punishable as a felony under the CSA, such as the sale, purchase, or manufacture of cocaine and some conduct that is not, such as simple possession." He submitted that because the record was not clear as to whether he had been convicted of purchasing cocaine with intent to distribute, and thus of committing an aggravated felony, the IJ did not err in invoking the *Moncrieffe* presumption and finding that his conviction was for mere possession of cocaine— an offense having no analogue among the offenses the INA designates as aggravated felonies.[32] According to Francisco, *Moncrieffe* required the IJ, and thus the BIA, to "presume that [his] conviction rested on nothing but the least culpable conduct" criminalized in Fla. Stat. § 893.135(1)(b)1.c: mere possession of cocaine.[33]

On June 18, 2015, the BIA overturned the IJ's decision and reinstated the removal finding. Once again, the BIA found that the modified categorical approach applies to Fla. Stat. § 893.135(1)(b)1.c because the statute effectively creates multiple crimes, some of which qualify as aggravated felonies and some

---

[32] In referring to the "record," Francisco was apparently referring to the judgment, including the sentences, the Circuit Court entered after he pled guilty to Counts 1 and 2 of the Information, and not to the testimony he gave at the January 13, 2015 removal hearing.

[33] Implicit in Francisco's argument was the proposition that the IJ, and the BIA on review, were precluded from considering his testimony that he accompanied the undercover agent to the warehouse for the purpose of purchasing cocaine.

that do not.[34]  After determining that the modified categorical approach applied,

the BIA agreed with the Government that Francisco had the burden of proving that

he was eligible for cancellation of removal and that he failed to carry his burden.  It

held that Francisco failed to prove that he had not committed a drug trafficking

offense or engaged in illicit trafficking in a controlled substance, aggravated

felonies listed in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).  Since neither

Count 1 of the Information nor the sentence imposed by the Circuit Court revealed

which Fla. Stat. § 893.135(1)(b)1.c offense Francisco violated, the onus fell on him

to prove that he had not committed an aggravated felony.  He failed to carry that

burden and therefore rendered himself ineligible for cancellation of removal.  The

BIA accordingly sustained the Government's appeal, vacated the IJ's grant of

cancellation of removal, and ordered Francisco removed to the Dominican

Republic.

III.

Throughout this litigation, the parties and the BIA have agreed that the

modified categorical approach applies to Fla. Stat. § 893.135(1)(b) because it is a

---

[34] The BIA distinguished our decision in *Donawa* on the ground that Fla. Stat.
§ 893.135(1)(b)1.c "expressly requires that the defendant have knowledge of the nature of the
substance in his possession," the same *mens rea* as required in 21 U.S.C. § 841(a)(1).  In
contrast, the statute at issue in *Donawa*, Fla. Stat. § 893.13(1)(a)(2), did not require knowledge
of the nature of the substance in possession, meaning that the crime did not have a categorical
match in the CSA.

divisible statute.[35]  In *Cintron v. U.S. Attorney General*, however, a panel of this Court recently held that Fla. Stat. § 893.135(1)(c) is neither divisible nor a categorical match to a federal crime in the CSA.  2018 WL 947533, at *3–*4, *6. The holding of *Cintron* controls our decision because Fla. Stat. § 893.135(1)(b) and (1)(c) have substantively identical language.[36]  Therefore, Francisco's conviction under Fla. Stat. § 893.135(1)(b)1.c cannot be an aggravated felony.[37]

---

[35] Although we lack jurisdiction to review a judgment granting or denying discretionary relief from a removal order, such as cancellation of removal, INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i), we may review questions of law, INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).  It is a legal question whether a conviction under a statute is an aggravated felony.  *Donawa*, 735 F.3d at 1279–80.

[36]  In pertinent part, Fla. Stat. § 893.135(1)(b)–(c) states:

> (b) 1.  Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, as described in s. 893.03(2)(a)4., or of any mixture containing cocaine, but less than 150 kilograms of cocaine or any such mixture, commits a felony of the first degree, which felony shall be known as "trafficking in cocaine," punishable as provided in s. 775.082, s. 775.083, or s. 775.084. . . .

> (c) 1.  A person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 4 grams or more of any morphine, opium, hydromorphone, or any salt, derivative, isomer, or salt of an isomer thereof, including heroin, . . . or 4 grams or more of any mixture containing any such substance, but less than 30 kilograms of such substance or mixture, commits a felony of the first degree, which felony shall be known as "trafficking in illegal drugs," punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

[37] Since we consider Fla. Stat. 893.135(1)(b)1.c to be an indivisible statute that lacks a categorical match in the CSA, we do not reach the issue of whether the *Moncrieffe* presumption applies in determining an alien's eligibility for cancellation of removal when the *Shepard* documents are inconclusive as to which crime the alien committed in a divisible statute.  The circuits have split on this issue.  *See Le v. Lynch*, 819 F.3d 98, 105–06 (5th Cir. 2016) ("[T]he alien, not the Government, bears the initial burden of production of evidence that he is eligible

The consequence is that Francisco satisfied the third requirement for eligibility for

cancellation of removal, that he "has not been convicted of an aggravated felony."

INA § 240A(a)(3); 8 U.S.C. § 1229b(a)(3).  We accordingly vacate the BIA

decision and remand the case for further proceedings.[38]

        **SO ORDERED.**

---

for discretionary relief."  (quotation omitted)); *Syblis v. U.S. Attorney Gen.*, 763 F.3d 348, 357 (3d Cir. 2014) ("[A]n inconclusive record of conviction does not satisfy an alien's burden of demonstrating eligibility for relief from removal."); *Sanchez v. Holder*, 757 F.3d 712, 719–20 (7th Cir. 2014) (holding that the burden of proof controls only if the evidence remains inconclusive after the adjudicator examines evidence outside *Shepard* evidence documents); *Young v. Holder*, 697 F.3d 976, 989 (9th Cir. 2012) (en banc) ("[A]n inconclusive record of conviction does not demonstrate eligibility for cancellation of removal."); *Salem v. Holder*, 647 F.3d 111, 116 (4th Cir. 2011) ("Presentation of an inconclusive record of conviction is insufficient to meet an alien's burden of demonstrating eligibility."); *Garcia v. Holder*, 584 F.3d 1288, 1289 (10th Cir. 2009) ("An alien who has conceded removability has the 'burden of establishing that he or she is eligible for any requested benefit or privilege.'" (quoting 8 C.F.R. § 1240.8(d)). *But see Sauceda*, 819 F.3d at 532 (holding that "the unrebutted *Moncrieffe* presumption applies" when the record is inconclusive as to which offense the alien committed in a divisible state statute); *Martinez v. Mukasey*, 551 F.3d 113, 122 (2d Cir. 2008) (holding that the Board "erred by placing the burden on [an alien] to show that his conduct was the equivalent of a federal misdemeanor").

    [38] In appealing the IJ's January 13, 2015 decision, the Government argued, as second ground for reversal, that in light of the conduct that led to Francisco's convictions of conspiring to violate and violating Fla. Stat. § 893.135(1)(b)1.c, the IJ abused his discretion in granting Francisco's application for cancellation of removal.  Given its holding that Francisco failed to prove that he had not been convicted of an aggravated felony, the BIA did not reach the argument.  We assume that on remand, the BIA will address it.